1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

TESSERA, INC.,

Plaintiff,

v.

TOSHIBA CORPORATION,

Defendant.

Case No.  15-cv-02543-BLF

**ORDER (1) GRANTING IN PART AND DENYING IN PART TOSHIBA'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING TESSERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

[Re:  ECF 184, 142]

Plaintiff Tessera, Inc. ("Tessera") and Defendant Toshiba Corporation ("Toshiba") have brought counter suits against each other seeking to resolve their dispute as to the proper measure of royalty payments due under their license agreement and its addendums.  Tessera contends that it is entitled to royalty payments for each F-μBGA Package produced by Toshiba.  Toshiba counters that the Agreements are patent-infringement based, and thus, royalties are owed only when a Toshiba product incorporates Tessera-patented technology and that it has properly terminated the Agreement.  Before the Court are the parties' cross motions for summary judgment.  For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Toshiba's motion and DENIES Tessera's motion.

**I.    BACKGROUND**

Tessera is a 25-year-old public technology company based in San Jose, California that researches and develops advanced semiconductor packaging technologies, and transfers or licenses its technologies and the patents that protect them to its customers.  Pl.'s Mot. 1.  In the 1990s, Tessera patented a type of Chip Scale Package ("CSP") packaging technology called the "Tessera Compliant Chip" or "TCC" technology.  Def.'s Mot. 2.  Tessera marketed the embodiment of this technology as the μBGA® ("micro Ball Grid Array") and marketed its TCC

patent portfolio to companies in the semiconductor packaging industry. *Id.* The parties entered into a license agreement for Tessera's TCC technology in 1999, and amended the agreement in 2002 and again in 2005 (collectively, "Agreements" or "TCC License").

**A. The 1999 Agreement**

In 1999, the parties signed a licensing agreement whereby Tessera granted Toshiba a non-exclusive license to "certain patents and patent applications relating to [Tessera's] semiconductor integrated circuit ('IC') packaging for single point bonded TCCs." Ex. 1 to Glasser Decl. ISO Pl.'s Opp'n ("Glasser Decl."), at 1, ECF 158-3, 157-4 ("1999 Agreement" or "Agreement").

The 1999 Agreement defined the term TCC as "an acronym for Tessera Compliant Chip, a type of integrated circuit ('IC') package which is the subject matter of certain Tessera Patents licensed hereunder." *Id.* ¶ I.A. "Tessera Patent" was defined to mean "Patent(s) or claims within such Patent(s) for the design, manufacture, and/or assembly of TCCs . . . owned by Tessera prior to expiration or termination of th[e] Agreement." *Id.* ¶ I.D. Tessera Patents "consist[ed] of those issued Patents set forth in Attachment A," which was to be "amended from time to time to include further issued Patents directly related to the scope of the license grant." *Id.*

In addition to the license fee, Toshiba was to pay "running royalties . . . per Billable Pin[1] for TCCs" Toshiba made under the licensing agreement. *Id.* ¶ III.B. The Agreement granted Tessera the "right to examine and audit through an independent third party CPA firm . . . all records of [Toshiba] that [might] contain information bearing upon the amount of fees payable under th[e] Agreement." *Id.* ¶ XI.A. The results of any such audit were to be considered final, and Toshiba was obligated to pay any amount the third party CPA firm found to be payable within 30 days of receiving the auditor's report. *Id.*

The 1999 Agreement was to "remain in full force until the expiration of the last to expire of any Tessera Patent," but allowed Toshiba to "terminate th[e] Agreement by reason of non-use of the relevant Tessera Patents licensed hereunder." *Id.* ¶ X.A. Termination by Toshiba would be effective immediately "upon Tessera's receipt of a written notice signed by [Toshiba]." *Id.*

---

[1] The Agreement defined "Billable Pin" as "any electrical connection to an IC bond pad made or contained in any TCC licensed" through the Agreement. 1999 Agreement ¶ I.F.

United States District Court
Northern District of California

1   The 1999 Agreement is a fully integrated contract, which "embodies the entire

2   understanding between the parties."  *Id.* ¶ XVI.I.

3   **B.    The 2002 Amendment**

4   Sometime between 2000 and 2002, a dispute arose as to whether F-μBGA Packages were

5   royalty bearing.  Pl.'s Mot. 2; Def.'s Mot. 5.  The parties were able to reach a business solution,

6   and in May 2002 executed the First License Amendment to the TCC License.  Pl.'s Mot. 2–3;

7   Def.'s Mot. 6.  The parties dispute the impact of this amendment, specifically, whether the

8   Amendment caused all F-μBGA Packages to be royalty bearing, or whether they were royalty

9   bearing only to the extent they infringed a valid Tessera patent.  *Compare* Pl.'s Mot. 2, *with* Def.'s

10   Mot. 5–6.[2]

11   The First License Amendment was intended ████████████████████████████████

12   ██████████████████████████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████ Ex. 2 to Glasser

15   Decl., at 1, ECF 158-4, 157-5 ("2002 Amendment" or "First Amendment").  The First

16   Amendment did not change the definition of "TCC" or any other term—with respect to the

17   definitional section, the First Amendment only added definitions of ██████████████████

18   ██████████████████████████████  *Id.*  The 2002 Amendment defined "F-μBGA

19   Package" as,

20   ██████████████████████████████████████████

21   ██████████████████████████████████████████

22   ██████████████████████████████████████████

23   ████████████████████████████████

24   and listed four "examples" of ███████████████ made by Toshiba at the time, ███████████

25

26

27   ─────────────────

28   [2] The Court notes that the parties further dispute whether Type 4 F-μBGA Packages actually
infringed a Tessera patent at the time of the First Amendment.  *See* Pl.'s Mot. 3; Def.'s Mot. 6.
Resolution of this issue is not necessary, so the Court declines to address it.

United States District Court
Northern District of California

1     ████████████████████████████[3] *Id.*  The 2002 Amendment further provided that Toshiba

2     would ███████████████████████████████████████████████████████,"

3     and included a schedule of royalties.  *Id.* at 2.  These amendments appear to be the only relevant

4     changes to the Agreement.

5         **C.    The 2005 Amendment**

6         The parties executed a Second License Amendment in August 2005 ███████████

7     ███████████████████████████████████████████████"  Ex. 3 to

8     Glasser Decl., ECF 158-5, 157-6 ("2005 Amendment").  █████████████████

9     █████████████████████████████████████████████

10     ████████████████████████████████████████████████████

11     *Id.*  The 2005 Amendment does not affect the present dispute.

12     **II.    LEGAL STANDARD**

13         Federal Rule of Civil Procedure 56 governs motions for summary judgment.  Summary

14     judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions

15     on file, together with the affidavits, if any, show that there is no genuine issue as to any material

16     fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v.*

17     *Catrett*, 477 U.S. 317, 322 (1986).  "Partial summary judgment that falls short of a final

18     determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be

19     tried."  *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987).

20         The moving party "bears the burden of showing there is no material factual dispute," *Hill*

21     *v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court

22     the portions of the materials on file that it believes demonstrate the absence of any genuine issue

23     of material fact."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

24     Cir. 1987).  In judging evidence at the summary judgment stage, "the Court does not make

25     credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a

26     light most favorable to the nonmoving party."  *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891

27

28

_____

[3] "Agreement" refers to the 1999 Agreement.  *See* 2002 Amendment, at 1.

F. Supp. 510, 513–14 (N.D. Cal. 1995).  For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving party]."  *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

## III.     THE MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In its motion, Toshiba asks the Court to find that (1) the Toshiba TCC License Agreement is an infringement-based license requiring payment of royalties only if Toshiba practices the claims of the unexpired, valid, and enforceable licensed patents; and (2) Toshiba properly terminated the TCC License.  Def.'s Mot. 1.  Tessera opposes Toshiba's motion, arguing that Toshiba's proposed contract interpretation is contradicted by the plain language of the Agreement, the negotiating history, and Toshiba's performance under the Agreement.  Pl.'s Opp'n 1, ECF 187-5, 157-45.  Tessera also contends that Toshiba's request that the Court interpret a provision allowing termination of the Agreement for "non-use of the relevant Tessera Patents licensed hereunder" as limited to a specific list of patents that Tessera supposedly gave Toshiba in 1997 is without merit.  *Id.* at 2.

Tessera moves for summary judgment on its first and third causes of action—breach of contract and declaratory relief regarding F-μBGA Packages—and Toshiba's first counterclaim.  Pl.'s Mot. 1.  Essentially, Tessera asks the Court to find that Toshiba's royalty obligations are product based.  *Id.* at 2.  Toshiba disagrees, and argues that the royalty obligations are triggered by patent infringement, rather than general F-μBGA Package characteristics.  Def.'s Opp'n 1, ECF 160, 159-4.

Although the parties filed two motions for partial summary judgment, the first issue raised by Toshiba and the only issue raised by Tessera are the same—the parties are asking this Court to determine the nature and scope of the 1999 Agreement and the 2002 Amendment.  Accordingly, the Court must determine whether Toshiba's royalty obligations are triggered by patent infringement or whether its royalty obligations are product-based.  If the Court grants one party's motion on this issue, it must necessarily deny the other's motion.  Resolution of the nature and scope of the 1999 Agreement and 2002 Amendment, however, does not resolve the second issue Toshiba raises in its motion regarding termination.  With that in mind, the Court addresses the

1    issues in turn.

2    IV.    **DISCUSSION**

3        A.    **The TCC License Requires Patent Infringement to Trigger Royalties**

4        Toshiba makes two arguments in support of its position that the Agreement is patent-

5    infringement based: collateral estoppel and contract interpretation.  Tessera's motion addresses

6    only the latter.  The Court deals with each in turn.

7            i.    **Collateral Estoppel**

8                a.    Legal Standard

9        "Because this Court is sitting in diversity jurisdiction, it must follow California law."

10   *Shaffer v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, No. 10-3943, 2011 WL 3047478, at * 4

11   (N.D. Cal. July 25, 2011); *see also S. Cal. Stroke Rehab. Assoc., Inc. v. Nautilus, Inc.*, 782 F.

12   Supp. 2d 1096, 1105 (S.D. Cal. 2011) (declining to apply federal standards to determine the

13   preclusive effect of federal court judgment in diversity action).  Generally, "[c]ollateral estoppel,

14   or issue preclusion, prevents parties or their privies from relitigating issues litigated and decided in

15   a prior proceeding."  *Happy Nails & Spa of Fashion Valley, L.P. v. Su*, 217 Cal. App. 4th 1459,

16   1469 (2013).  "For an issue to be precluded from relitigation, the following requirements must be

17   satisfied: (1) the issue must be identical to an issue decided in a prior proceeding; (2) the issue

18   must have been actually litigated in the prior proceeding; (3) the issue must have been necessarily

19   decided in the prior proceeding; (4) the decision in the prior proceeding must be final and on the

20   merits; and (5) the party against whom preclusion is sought must have been a party to or in privity

21   with a party to the prior proceeding."[4] *Id.* (citing *People v. Garcia*, 39 Cal. 4th 1070, 1077 (2006);

22   *Castillo v. City of Los Angeles*, 92 Cal. App. 4th 477, 481 (2001)).

23                b.    Discussion

24

25   _____

26   [4] The Supreme Court of California "rejected the mutuality doctrine and recognized the twofold
     aspect of res judicata."  *Clemmer v. Hartford Ins. Co.*, 22 Cal. 3d 865, 874 (1978) (in bank)
     (citation omitted).  Thus, under California law, collateral estoppel "not only bars relitigation of the

27   same cause of action once a final determination has been made by a court of competent
     jurisdiction, but it also precludes a reexamination as between the parties or their privies of any

28   issue necessarily decided if the issue is involved in any subsequent lawsuit brought on a different
     cause of action."  *Id.*

United States District Court
Northern District of California

6

1    Toshiba argues that the decision in *Tessera, Inc. v. UTAC (Taiwan) Corp.*, No. 10-cv-

2    4435, 2014 WL 1339693 (N.D. Cal. Mar. 31, 2014)—in which the court held that the identical

3    definition of "TCC" in UTAC's TCC license was not ambiguous and granted UTAC's motion for

4    summary judgment based on the court's interpretation of the agreement that "TCC," as defined by

5    the parties, required patent infringement before a royalty would be due—prevents Tessera from

6    succeeding in its argument that the definition of "TCC" renders the license anything other than a

7    patent infringement-based license.  Def.'s Mot. 15.  Toshiba contends that all five requirements of

8    collateral estoppel are met.  *Id.*  As to the first element, Toshiba argues that Tessera and UTAC

9    argued and the court considered the same issues of law and fact on the definition of "TCC," which

10   is identical to the definition here and California law applies to the interpretation of both.  *Id.*  As to

11   the second and fifth elements, Toshiba states that Tessera had a full and fair opportunity to

12   actually litigate its position.  *Id.*  As to the third and fourth elements, Toshiba argues that the

13   court's summary judgment order finally decided the issue and the issue was essential to the case.

14   *Id.* at 16.

15          Tessera, however, argues that Toshiba's collateral estoppel argument is "meritless."  Pl.'s

16   Opp'n 6.  Tessera contends that (1) the factual allegations were not identical to the factual

17   allegations in this case, (2) the Agreements were not the same, (3) the parties were not the same,

18   (4) the negotiation history was not the same, and (5) the parties' course of performance was not

19   the same,[5] among other differences.  *Id.* at 7–8.  In its reply, Toshiba asserts that none of the

20   differences Tessera points to are relevant because the *UTAC (Taiwan)* court did not consider those

21   factors.  Reply ISO Def.'s Mot. 2, ECF 189, 176-3.

22          Because there is no dispute that Tessera brought and litigated the claims in *UTAC*

23

24   _____

[5] Tessera contends that Toshiba's position that the Agreement is royalty based contradicts
25   Toshiba's course of performance.  Pl.'s Mot. 7.  Specifically, Tessera points to the fact that
     Toshiba prepared royalty reports using the Agreement's physical product definition without
26   referencing patent infringement and without providing information sufficient to determine whether
     its packages infringed any of Tessera's patents.  *Id.*  Toshiba properly argues, however, that its
27   conduct is equally consistent with its position that it would not contest that the F-μBGA Packages
     qualified under an infringement-based license until the patents expired.  Def.'s Opp'n 12.  This is
28   consistent with Toshiba asking, in 2013, for a refund of the royalties it had paid since 2010.  *Id.* at
     12 n.7; Ex. 15 to Liang Decl. ISO Def.'s Opp'n ("Liang Decl. II"), ECF 160-7, 159-16.

United States District Court
Northern District of California

*(Taiwan)*, the Court need consider only whether the issue in this action is identical to the issue

decided in *UTAC (Taiwan)* and whether the prior decision constitutes a final decision on the

merits.

The identical issue requirement of collateral estoppel "addresses whether 'identical factual

allegations' are at stake in the two proceedings." *Lucido v. Superior Court*, 51 Cal. 3d 335, 342

(1990).

> To determine whether two proceedings involved identical issues,
> courts "consider several factors: Is there a substantial overlap
> between the evidence or argument to be advanced in the second
> proceeding and that advanced in the first?  Does the new evidence or
> argument involve application of the same rule of law as that
> involved in the prior proceeding?  Could pretrial preparation and
> discovery relating to the matter presented in the first action
> reasonably be expected to have embraced the matter sought to be
> presented in the second?  How closely related are the claims
> involved in the two proceedings?"

*Happy Nails & Spa*, 217 Cal. App. 4th at 1470 (quoting *Burdette v. Carrier Corp.,* 158 Cal. App.

4th 1668, 1689 (2008)).

The Court agrees with Tessera.  While Toshiba is correct that the *UTAC (Taiwan)* court

did not consider the extrinsic evidence cited by Tessera, and although the provisions at issue are

identical, the underlying facts are different.  Under California law, this necessarily means that the

issues are not identical, and thus, collateral estoppel cannot apply.  *See Sako v. Wells Fargo Bank

N.A.*, No. 14CV1034, 2016 WL 110513, at *4–5 (S.D. Cal. Jan. 8, 2016) (applying California

law); *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846 (2002) ("[I]f the very same

facts and no others are involved in the second case, . . . the prior judgment will be conclusive as to

the same legal issues which appear, assuming no intervening doctrinal change."); *Wimsatt v.

Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1517 (Ct. App. 1995)

("Where the previous decision rests on a different factual and legal foundation than the issue

sought to be adjudicated at the case at bar, collateral estoppel effect should be denied.").  Because

the Court finds that the facts are not identical, it need not consider whether the ruling in *UTAC

(Taiwan)* constitutes a final judgment.[6]  Accordingly, Toshiba's motion for partial summary

United States District Court
Northern District of California

---

[6] Although the Court finds that collateral estoppel does not apply to preclude relitigation of the

United States District Court
Northern District of California

1   judgment on the ground of collateral estoppel is DENIED.

2      **ii.**  **Contract Interpretation**

3       a. Legal Standard

4      California law governs the interpretation of the Agreement.  1999 Agreement ¶ XVI.A.

5   "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the

6   parties." *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal. 4th 377, 390 (2005) (citations and

7   internal quotation marks omitted); Cal. Civ. Code § 1636.  "It is the outward expression of the

8   agreement, rather than a party's unexpressed intention, which the court will enforce." *Winet v.*

9   *Price*, 4 Cal. App. 4th 1159, 1166 (Ct. App. 1992).  Thus, "[t]o avoid future disputes and to

10   provide predictability and stability to transactions, courts attempt to interpret the parties'

11   intentions from the writing alone, if possible." *Abers v. Rounsavell*, 189 Cal. App. 4th 348, 356

12   (Ct. App. 2010) (citations omitted).

13      When parties dispute the meaning of language in a contract, the court must determine

14   whether such language is ambiguous by deciding whether it is "reasonably susceptible" to more

15   than one of the interpretations urged by the parties. *Badie v. Bank of Am.*, 67 Cal. App. 4th 779,

16   798 (1998).  To determine whether the interpretation is "reasonably susceptible" to more than one

17   of the interpretations urged by the parties, the court may consider extrinsic evidence. *WYDA*

18   *Assoc. v. Merner*, 42 Cal. App. 4th 1702, 1710 (Ct. App. 1996).  "An agreement is not ambiguous

19   merely because the parties (or judges) disagree about its meaning." *Abers*, 189 Cal. App. 4th at

20   356.  Instead, "words still matter" and "written agreements whose language appears clear in the

21   context of the parties' dispute are not open to claims of 'latent' ambiguity." *Id.* (citation omitted).

22   If the contract is not "'reasonably susceptible' to the interpretation urged," then "the case is over."

23   *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847–48 (1995).  But "[i]f in light of

24   the extrinsic evidence the court decides the language is 'reasonably susceptible' to the

25   interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting

26

27   issue, it may consider or even rely upon the prior decision.  *Flores*, 93 Cal. App. 4th at 852
 (finding that if a second proceeding involves an instrument identical with the one dealt with in the
28    first proceeding, but collateral estoppel does not apply because they are different instruments, the
 court may place reliance upon the first decision).

United States District Court
Northern District of California

the contract." *Winet*, 4 Cal. App. 4th at 1165.

"Whether a contract is ambiguous is a question of law, but if the contract is ambiguous, the conflict is ordinarily a genuine dispute of material fact inappropriate for resolution on summary judgment." *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, No. 12-cv-2182, 2016 WL 1267786, at *11 (E.D. Cal. Mar. 31, 2016) (citations omitted) (applying California law). Therefore, the Court may grant summary judgment on the contract interpretation issue only if it finds that the contract is not ambiguous.

### b. Discussion

The Court begins with an examination of the language of the Agreement itself. In doing so, the Court is mindful that the parties are sophisticated corporations with experience in patent licensing, and thus would have negotiated the Agreement with patent law in mind. *See Tex. Instruments Inc. v. Tessera, Inc.,* 231 F.3d 1325, 1329–30 (Fed. Cir. 2000) (holding that, in interpreting the disputed term "litigation," the district court erred in applying the California Code of Civil Procedure's definition instead of patent law's understanding because the parties were sophisticated technology companies that would have contemplated patent law, including its remedies, when negotiating the contested licensing agreement).

The main issues here are the nature of the 1999 Agreement and whether the 2002 Amendment changed the nature of the 1999 Agreement as to F-μBGA Packages. As previously explained, the parties primarily disagree on what triggers Toshiba's royalty obligations—its production of products satisfying the physical definition of F-μBGA as defined in the 2002 Amendment or its production of products that infringe a licensed Tessera patent. The Court interprets the scope and nature of each agreement in turn.

### 1. The 1999 Agreement

The 1999 Agreement obligates Tessera to provide Toshiba a "limited license to the Tessera Patents to package and/or assemble ICs into TCCs and use or sell such TCCs world wide." 1999 Agreement ¶ II.A. In return, the Agreement obligates Toshiba to pay a license fee and running royalties. *Id.* ¶ III.B. The meaning of TCC is of paramount importance because it forms both the foundation of the license grant and the exclusive basis of the royalty calculation. The 1999

1    Agreement defines "TCC" as,

2              an acronym for Tessera Compliant Chip, a type of integrated circuit
                 ("IC") package which is the subject matter of certain Tessera Patents
3              licensed hereunder.  By way of non-limiting example, such TCCs
                 may include IC packages that are in a fan-in arrangement (where
4              external electrical terminals overlie a surface of an IC device) or are
                 in a fan-out arrangement (where external electrical terminals are
5              arranged beyond the periphery of an IC device) or are in a fan-
                 in/fan-out arrangement (where external electrical terminals both
6              overlie a surface of an IC device and extend beyond the periphery
                 of the IC device).  In such examples, the contact bearing surface of the
7              IC device may face either towards or away from the external
                 electrical terminals.

8    *Id.* I.A.  In light of this definition, critical to the determination of the proper scope of the term

9    "TCC" is the interpretation of the phrase "subject matter of certain Tessera patents."

10         The parties disagree on the meaning of the phrase.  Because the parties have presented a

11   dispute as to the meaning of a term of the Agreement, the Court must determine whether that term

12   is reasonably susceptible to either party's interpretation.  *Badie*, 67 Cal. App. 4th at 798.

13   "Whether the contract is reasonably susceptible to a party's interpretation can be determined from

14   the language of the contract itself or from extrinsic evidence of the parties' intent."  *Id.* (citations

15   and internal quotation marks omitted).

16          Toshiba contends that industry practice in patent licensing uses the Patent Act and U.S.

17   Patent Office Rules terminology "subject matter" of a patent to refer to what is claimed.  Def.'s

18   Mot. 14.  Consistent with this, Toshiba argues, the Tessera patents licensed under the 1999

19   Agreement contain a sworn inventor's declaration using the "subject matter" phrase to mean the

20   claimed invention.  *Id.*  Therefore, Toshiba's obligation to pay royalties on "TCCs," the "subject

21   matter of certain Tessera Patents," means royalties are only due on a product if it falls within the

22   claims of those patents.  *Id.* at 14–15.  Tessera disputes this, and contends that settled patent law

23   treats the subject matter of a patent as broader than its claims or the invention.  Pl.'s Opp'n 11

24   (citing cases).  Thus, Tessera's position is that the subject matter of a patent is not the same as the

25   subject matter of only a patent's claims.  *Id.*

26          This very issue was addressed and decided in *UTAC (Taiwan)*.  The phrase was interpreted

27   to cover only the patented technology.  *UTAC (Taiwan)*, 2014 WL 1339693, at *5.  There, the

28

United States District Court
Northern District of California

11

court explained,

> In focusing the parties' arguments on the actual term in dispute—the "subject matter of . . . patents"—the meaning of the term becomes quite obvious. A "patent," according to the PTO, is:
>
>> a property right granted by the Government of the United States of America to an inventor 'to exclude others from making, using, offering for sale, or selling the invention throughout the United States or importing the invention into the United States' for a limited time in exchange for public disclosure of the invention when the patent is granted.
>
> Thus, the "subject matter of . . . patents" as it appears in the Agreement, read in the context of patent law, refers to technology covered by the 'property rights' granted to Tessera by the PTO. In patent law, it is axiomatic that the scope of those property rights, i.e. the scope of patent protection, is defined by the claims. Accordingly, the "subject matter of . . . patents" refers not to the "core concepts" of the technology as described in the specification, drawings, or elsewhere, but instead to the invention actually disclosed in the claims.

*Id.* (internal citations omitted). Because the Court finds the *UTAC (Taiwan)* decision well reasoned and correct, the Court relies on its logic to conclude that the phrase "subject matter of Tessera patents" refers only to technology covered by the property rights granted to Tessera by the PTO or other licensing body. *See supra*, at 8 n.6.

Although Tessera urges the Court to follow Judge Wilken's decision in *Powertech Tech. Inc. v. Tessera, Inc.*, No. 10-cv-945, ECF 235 (N.D. Cal. Apr. 15, 2013), the Court declines to do so. In *Powertech*, the court held that a similar license required Powertech Technology, Inc. to pay royalties for all products meeting the physical product definition in the agreement, without a showing of infringement. Reply ISO Pl.'s Mot. 10, ECF 187-8, 178-4; Pl.'s Opp'n 17. However, the relevant terms are different. Here, Toshiba's royalty obligation is based on the number of Billable Pins for TCCs. *See* 1999 Agreement ¶ III.B; 2002 Amendment ¶ 4. In contrast, in *Powertech*, the agreement based "the royalty obligation on the number of 'Billable Pins' for '*TCC Licensed Products*' that [Powertech] [ ] sold and provide[d] specific, technical definitions for those terms that [did] not depend on patent coverage or infringement." *Powertech*, No. 10-cv-945, ECF 235, at 21 (emphasis added). The use of the phrase "TCC Licensed Products" makes plain that the agreement between Powertech and Tessera was product based. Importantly, that language

does not appear in the Agreements between Tessera and Toshiba.  Therefore, the Court does not find the agreement in *Powertech* analogous to the one at issue here.

Tessera also argues that the Agreement's definition of "Patent" as including patent applications, allowances, utility models, and a variety of other related intellectual property rights supports a finding that "subject matter of . . . patents" should be understood to cover more than merely the claims of the patents.  Pl.'s Mot. 4–5.  The Court disagrees.  Patent applications do not convey any non-provisional U.S. government-granted "property rights" to the applicant; thus their inclusion in the Agreement's definition of "Patent," and by extension to "Tessera Patents" and "TCC," could suggest a broader understanding of the term than the strict PTO definition.  Yet, in this case, paragraph I.D. of the 1999 Agreement belies any such interpretation.  Paragraph I.D., which defines the term "Tessera Patent," makes clear that the technology contained in any relevant patent applications are only "prospectively licensed" under the Agreement.  By its terms, the Agreement contemplates that the license grant will extend to include technology disclosed in Tessera's patent applications once those applications have matured, *i.e.* once the technology has been patented.

Accordingly, the Court concludes that the definition of "subject matter of . . . patents" is not reasonably susceptible to Tessera's interpretation.  The term is not ambiguous and its clear and explicit meaning must govern.  *See Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1264 (1992).  The determination that the phrase "subject matter of certain Tessera patents" can only reasonably be interpreted in the context of patent law feeds into the ultimate conclusion that the 1999 Agreement is an infringement-based agreement.

### 2.  Negotiation History and Extrinsic Evidence

Generally, when the Court finds that the contract is not reasonably susceptible to one party's interpretation, it need not go on to consider the parties' arguments regarding the submitted extrinsic evidence.  However, under California law, "where the parties' negotiation history or extrinsic evidence shows that terms were unacceptable, the court may not read the rejected terms into the contract." *Sun Pac. Farming Co-op., Inc. v. Sun World Int'l*, No. CVF01-6102, 2006 WL 1716206, at *10 (E.D. Cal. June 16, 2006), *aff'd in part and vacated in part on other grounds*, 277

Fed. Apx. 727 (9th Cir. 2008).  The Court will therefore only consider the submitted extrinsic evidence for the purpose of confirming that the Court's interpretation of the 1999 Agreement as an infringement-based license is not prohibited.

The parties dispute the negotiation history; however, the evidence supports only one conclusion—that the Agreement is infringement based.  Toshiba provides an array of documents in support of its claim that it asked for a patent only license.  In February 1998, Toshiba sent John Smith, President and CEO of Tessera, a letter expressing interest in Tessera's patent portfolio regarding its CSP technology.  Ex. 8 to Liang Decl. ISO Def.'s Mot. ("Liang Decl. I"), ECF 143-8, 139-10.  In May 1998, Christopher M. Pickett, Tessera's Director of Intellectual Property, sent Toshiba a revised version of what ultimately became the 1999 Agreement.  Ex. 10 to Liang Decl. I, ECF 143-9, 139-13.  In the May 1998 letter, Mr. Pickett stated that he "was given the action item to rewrite the TCC License Agreement Tessera [was] offering to Toshiba into a patent only license, i.e. excluding the technology transfer aspects of the license."  *Id.*  Mr. Picket attached a copy of the license making the necessary changes.  *Id.* ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  *See id.* at 7.
In June 1998, Mr. Pickett again wrote Toshiba, inquiring as to the status of its review of the License Agreement, "which was revised into a patent-only license per [Toshiba's] request."  Ex. 11 to Liang Decl. I, ECF 184-3.  Mr. Pickett laid out the entire negotiation history in an email dated August 27, 1998:

> . . . As you will remember, Toshiba initially requested license terms early this year.  I supplied those terms on March 4, 1998 in a meeting here at Tessera.  In a subsequent meeting at Tessera on April 23, 1998, you requested a "patent-only" license agreement. Tessera agreed to your request and I provided a draft of that agreement to you by facsimile on May 8, 1998.

Ex. 12 to Liang Decl. I, ECF 184-4.  In response to this email, in September 1998, Toshiba sent edits to the agreement it referred to as the "Tessera Patent License."  Ex. 13 to Liang Decl. I, ECF 143-12, 139-18.  In that communication, ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

United States District Court
Northern District of California

1    ███████████████████  Def.'s Mot. 4; Ex. 13 to Liang Decl. I, ECF 143-12, 139-18.  At some

2    point, between this letter and the final, executed version of the Agreement, the phrase "subject

3    matter of certain Tessera patents," made its way back into the definition of "TCC."

4         Tessera contends that ████████████████████████

5    ██████████████████████████████████████████████████

6    ████████████  Pl.'s Opp'n 10; Reply ISO Pl.'s Mot. 7.  Tessera cites to the

7    aforementioned facsimile that Toshiba sent Tessera in September 1998 and to the Agreement

8    itself.  Ex. 10 to Glasser Decl. ISO Pl.'s Opp'n, ECF 158-12, 157-13; Reply ISO Pl.'s Mot. 7.  The

9    former is not particularly helpful taken out of context, and as detailed above, Toshiba has provided

10   the context.  And the latter does not support Tessera's argument given the Court's interpretation of

11   the unambiguous language of the 1999 Agreement.

12        Tessera also cites to the declaration of Mr. Pickett, in which he states the following:



18   Pickett Decl. ¶ 5, ECF 158-2, 157-43.  The Court, however, does not find Mr. Pickett's declaration

19   sufficient to displace the evidence Toshiba provides because, "great weight is given to the

20   contemporaneous construction of the contract by the parties themselves prior to the time

21   controversy over its meaning arose."  *Lix v. Edwards*, 82 Cal. App. 3d 573, 579 (Ct. App. 1978).

22   Indeed, the contemporaneous evidence supports the Court's interpretation of the 1999 Agreement

23   as infringement based.  Additionally, "[a] party's unexpressed intentions regarding the effect of a

24   contract are irrelevant to the interpretation of the contract," and Tessera has not provided any

25   contemporaneous evidence regarding its interpretation of the contract as product based.  *Sun Pac.*

26   *Farming Co-op., Inc.*, 2006 WL 1716206, at *10.

27        Based on the foregoing, and consistent with Mr. Pickett's contemporaneous statements to

28   Toshiba at the time the parties entered into the Agreement, the Court concludes that the 1999

United States District Court
Northern District of California

Agreement was an infringement-based license. The Court must now consider whether the 2002 Amendment modified the infringement-based nature of the 1999 Agreement.

3. The 2002 Amendment[7]

The 2002 Amendment left unchanged most of the terms of the 1999 Agreement. The Amendment granted to Toshiba a [redacted] 2002 Amendment ¶ 2.A. Royalties are similarly due based on Billable Pins for TCCs. *Id.* ¶ 4. Further, the 2002 Amendment did not replace or modify the definitions of "TCC" or "Tessera Patents" found in the 1999 Agreement. The 2002 Amendment did, however, [redacted]

[redacted]

[redacted]

2002 Amendment ¶ 1.K. "Agreement" refers to the 1999 Agreement. *See id.* at 1.

Tessera argues that the 2002 Amendment [redacted] According to Tessera, Toshiba [redacted], which ended the debates over patent issues and contract interpretation. Pl.'s Mot. 5; Pl.'s Opp'n 12 [redacted]

[7] Tessera objects to the "inadmissible testimony" of Toshiba employee Shuzo Akejima as inadmissible speculation and lacking foundation due to Mr. Akejima's lack of personal knowledge of the negotiation of the First Amendment. Reply ISO Pl.'s Mot. 5 n.2. Because Mr. Akejima's deposition is not necessary for resolution of these motions, the Court does not rule on Tessera's objection.

United States District Court
Northern District of California

1  ████████████████████████████████████████████████████

2  ████████████████████████  Tessera asserts that the First Amendment's definitions of ████████

3  ████████ are based on physical product features that make no reference to patent infringement,

4  and thus ██████████████████████████████████████████████████.

5  Pl.'s Mot. 12.

6        Toshiba, however, contends that the 2002 Amendment is a written amendment to the TCC

7  License that must be read in the context of that Agreement.  Def.'s Mot. 16.  Toshiba further

8  argues that nothing changed the patent-infringement structure of the TCC License.  *Id.* at 17;

9  Def.'s Opp'n 8–10 ("Tessera could have changed the scope of the license grant or to specifically

10  license █████████████████████████████████████████

11  ████████████████████████████████████████████ (emphasis omitted)).  And, the definition of TCC was not changed.

12  ████████████████████████

13  Def.'s Mot. 17.  Accordingly, under the 2002 Amendment, ████████████████████████

14  ████████████████████████████████  *Id.*  Toshiba thus

15  contends that the parties defined their agreement by the scope of the licensed patent claims.  *Id.*

16        The Court agrees with Toshiba, and finds that the 2002 Amendment did not change the

17  nature of the 1999 Agreement.  As Toshiba correctly states, the 2002 Amendment defines ████

18  ████████████████████████████████████████████████████

19  ████████████████████████████████ 2002 Amendment ¶ 1.K.  The

20  fact that "Agreement" in this context refers to the 1999 Agreement, *id.* at 1, supports Toshiba's

21  position that the 2002 Amendment must be read in light of the 1999 Agreement, an infringement-

22  based license.  Adding credence to this conclusion is that the 2002 Amendment relies upon the

23  1999 Agreement's definition of "TCC," and the fact that ████████████████████████

24  ████████████████████████████████  *See* Def.'s Opp'n 7.  As to

25  the latter, ██████████████████████████████████████████████

26  ████████████████.  Therefore, Tessera's position that ████████████████████████

27  ████████████████████████████████████████ without

28  consideration of whether it would have otherwise infringed a Tessera patent is unreasonable.

1          Instead, the Court finds that the 2002 Amendment and the 1999 Agreement are

2    intrinsically linked.  Under the 2002 Amendment, ██████████████████████████████████

3    ██████████████████████████████████████████████, and, upon the expiration of

4    the patents, Toshiba would no longer be obligated to pay royalties.  *See Kimble v. Marvel Entm't,*

5    *LLC*, 135 S. Ct. 2401 (2015) (holding that a patent holder cannot charge royalties for the use of his

6    invention after its patent term has expired).  The unambiguous language of the 2002 Amendment

7    indicates that ████████████████████████████████████████████████████████████████████

8    ████████

9          The parties discuss at length the rationale behind the execution of the 2002 Amendment.

10   *See* Def.'s Mot. 17–18; Pl.'s Opp'n 12–14.  However, whatever prompted the parties the make the

11   changes is irrelevant—the Amendment is unambiguous in its adoption of the definition of "TCC"

12   and did not change the method for determining what royalties are owed.[8]  Tessera also points to

13   various admissions by Toshiba that █████████████████████████████████████████████████

14   ████████████████ to support its position that the 2002 Amendment changed the nature and scope

15   of the license.  Pl.'s Opp'n 13; Ex. 11 to Glasser Decl., ECF 181-5, 181-6; Ex. 13 to Glasser Decl.,

16   ECF 158-15, 157-16; Ex. 15 to Glasser Decl. at 47:1–6, ECF 181-7, 181-8.  In its reply, Toshiba

17   explains that  the effect of the 2002 Amendment was that █████████████████████████████

18   ██████████████████████████████████████  Reply ISO Def.'s Mot. 6.  According to Toshiba,

19   then, the language cited by Tessera is not an admission that the 2002 Amendment changed the

20   infringement-based structure of the TCC License, but merely an acknowledgement of the effect of

21   the Amendment.  Accordingly, the evidence Tessera presents is not conclusive, and does not affect

22   the unambiguous nature of the contract.

23          Therefore, the Court concludes that the 2002 Amendment did not change the nature of the

24   1999 Agreement, and is properly interpreted as an infringement-based license.  Accordingly, the

25   Court GRANTS IN PART Toshiba's motion for partial summary judgment, and finds that the

───────────────

[8] In any event, the negotiations ████████████████████████, supporting Toshiba's position.  *See, e.g.*, Ex. 26 to Liang Decl. I, at 1, ECF
143-14, 141-1 (April 2002 e-mail from Mr. Pickett to Toshiba, stating ████████████████████
████████████████████████████████████████████

United States District Court
Northern District of California

TCC License Agreement is a patent-infringement-based license requiring payment of royalties only if Toshiba practiced the claims of the unexpired, valid, and enforceable licensed patent, and DENIES Tessera's motion for partial summary judgment.

### B.    Toshiba's Termination of the TCC License

Toshiba also moves for an order confirming that Toshiba properly terminated the TCC License under the termination clause.  Def.'s Mot. 1; 1999 Agreement ¶ X.A.  Paragraph X.A. provides,

> This agreement shall become effective on the Effective Date and, unless earlier terminated as provided for elsewhere in this Agreement, shall remain in full force until the expiration of the last to expire of any Tessera Patent.  Notwithstanding, [Toshiba] may terminate this Agreement by reason of non-use of the relevant Tessera Patents licensed hereunder; such termination by [Toshiba] shall take effect immediately upon Tessera's receipt of a written notice signed by [Toshiba].

1999 Agreement ¶ X.A.

Toshiba first argues that the "relevant Tessera patents," refers to a subset of patents Tessera sent Toshiba in December 1997.  Def.'s Mot. 19.  Toshiba contends that only Christopher M. Pickett, Tessera's Director of Intellectual Property when the 1999 Agreement was signed, used the term "relevant patents" to describe a subset of the TCC patents.  Id. at 4 n.3, 19; Ex. 33 to Liang Decl. I, at 1, ECF 143-14, 141-19.  Accordingly, Toshiba asks this Court to find that the "relevant" patents are those Toshiba received in December 1997.  Def.'s Mot. 19.  Toshiba then argues that the "relevant" patents expired in February 2016, and accordingly, it was not using any of the "relevant" patents as of that date.  Id. at 20.  Therefore, Toshiba asks the Court to find that the Agreements terminated immediately upon Tessera's receipt of Toshiba's signed termination notice letter in accordance with paragraph X.A.  Id.

Tessera rejects Toshiba's contention for four independent reasons.  Pl.'s Opp'n 17.  First, Mr. Pickett's letter described only the "then-relevant patents," but under the Agreement, the portfolio of licensed patents was intended to change over time.  Id. at 19.  Second, Toshiba's position is inconsistent with the Agreement itself.  Id.  Tessera asserts that the Agreement defines the licensed "Tessera Patents" broadly, such that the group of licensed patents would change when

19

patents expired or when new patents issued.  *Id.*  Accordingly, the phrase refers to licensed patents in force at the time a party seeks to terminate.  *Id.*  Third, Toshiba's position is incongruous with Toshiba's conduct in this litigation.  *Id.* at 20.  Specifically, Tessera points to the fact that in its June 2015 counterclaim, Toshiba represented "relevant Tessera Patents" to mean all 'TCC-Licensed Patents" in effect at the time.  *Id.*  Tessera also emphasizes that in its amended counterclaim, Toshiba sought identification of all "relevant Patents" used by Toshiba.  *Id.*  Finally, Tessera argues that Toshiba's argument is inconsistent with Toshiba's position that ███████████ █████████████████████████████████ because that patent was issued after Mr. Picket sent Toshiba the purported 1997 list.  *Id.*

In reply, Toshiba contends that Tessera fails to account for ███████████████ █████████████████████████████████████ Reply ISO Def.'s Mot. 9.  Because these phrases are in fact distinct, Toshiba states that the Court must interpret them to refer to different sets of patents, and urges the Court to interpret the ambiguous language against Tessera, the party causing the uncertainty.  *Id.*  In addition, Toshiba contends that only its interpretation creates a meaningful termination right.  *Id.* at 10.

The Court agrees that Toshiba has a unilateral right to terminate the contract upon non-use of the "relevant Tessera Patents" licensed under the Agreements.  Indeed, Tessera does not contest this fact.  However, the parties do dispute the meaning of the phrase "relevant Tessera Patents."  In the face of disputed language in a contract, the Court must determine whether the language is ambiguous by deciding whether it is reasonably susceptible to more than one of the interpretations urged by the parties when considering extrinsic evidence.  The disputed term is not defined in the Agreement and has no clear meaning, thus this Court finds it is ambiguous.  A review of the competing extrinsic evidence here indicates that there is a genuine issue of material fact presented because the ambiguity could be resolved in a manner consistent with either party's position.  Therefore, the issue is inappropriate for resolution on summary judgment.  *See Lennar Mare Island*, 2016 WL 1267786, at *11.  Accordingly, the Court DENIES IN PART Toshiba's motion for partial summary judgment as to the meaning of "relevant Tessera Patents" and the issue of whether Toshiba properly terminated the TCC License in February 2016.

United States District Court
Northern District of California

**V.     ORDER**

For the foregoing reasons, Toshiba's first motion for summary judgment regarding contract interpretation is GRANTED IN PART and DENIED IN PART, and Tessera's motion for partial summary judgment on its first and third causes of action and on Toshiba's first counterclaim is DENIED.  Accordingly, the Court holds that the TCC License Agreement is an infringement-based license requiring payment of royalties only if Toshiba practices the claims of the unexpired, valid, and enforceable licensed patents.[9]

**IT IS SO ORDERED.**

Dated: November 7, 2016

BETH LABSON FREEMAN
United States District Judge

---

[9] The effect of this ruling on Toshiba's first counterclaim and Tessera's third cause of action is unclear, as Toshiba did not ask the Court to dismiss any of Tessera's cause of actions or  resolve any of its counterclaims.