IRELL & MANELLA LLP
Morgan Chu (70446)
MChu@Irell.com
Benjamin W. Hattenbach (186455)
BHattenbach@Irell.com
Michael D. Harbour (298185)
MHarbour@Irell.com
1800 Avenue of the Stars, Suite 900
Los Angeles, California 90067-4276
Telephone: (310) 277-1010
Facsimile: (310) 203-7199

A. Matthew Ashley (198235)
MAshley@Irell.com
Lisa S. Glasser (223406)
LGlasser@Irell.com
840 Newport Ctr. Dr., Suite 400
Newport Beach, CA 92660

Attorneys for Plaintiff
TESSERA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TESSERA, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TOSHIBA CORPORATION,<br><br>Defendant. | Case No. 5:15-CV-02543-BLF<br><br>**TESSERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON TOSHIBA'S REQUEST FOR A REFUND OF ROYALTY PAYMENTS**<br><br>Date: August 8, 2019<br>Time: 9:00 a.m. |



& MANELLA LLP
stered Limited Liability

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ..... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 3

III. TOSHIBA CANNOT SEEK REFUND OF ROYALTIES ALREADY PAID ..... 4

A. Federal Patent Law Prohibits Refund of Royalty Payments ..... 4

B. California Law Prohibits Refund of Payments Voluntarily Made ..... 7

C. Tessera Did Not "Breach" The Implied Covenant Of Good Faith ..... 10

D. Toshiba's Counterclaim Is Barred By The Statute of Limitations ..... 11

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Oil Serv. v. Hope Oil Co.*,
194 Cal. App. 2d 581 (1961)....................7

*Applied Elastometrics, Inc. v. Z-Man Fishing*,
521 F. Supp. 2d 1031 (N.D. Cal. 2007)....................5, 6

*Careau & Co. v. Security Pacific Business Credit, Inc.*,
222 Cal. App. 3d 1371 (1990)....................10

*Erie Tech. Prods. v. JFD Elecs.*,
1978 U.S. Dist. LEXIS 19704 (E.D.N.Y. Feb. 6, 1978)....................7

*Glue-Fold Inc. v. Slautterback Corp.*,
82 Cal. App. 4th 1018 (2000)....................11

*Gryczman v. 4550 Pico Partners, Ltd.*,
107 Cal. App. 4th 1 (2003)....................11

*Guz v. Bechtel Nat'l, Inc.*,
24 Cal. 4th 317 (2000)....................10

*Krieger v. Nick Alexander Imports, Inc.*,
234 Cal. App. 3d 205 (1991)....................11

*MedImmune, LLC v. PDL BioPharma, Inc.*,
No. C 08-5590 JF HRL, 2011 WL 61191 (N.D. Cal. Jan. 7, 2011)....................5

*Parino v. Bidrack*,
838 F. Supp. 2d 900 (N.D. Cal. 2011)....................7

*Perez-Encinas v. AmerUs Life Ins. Co.*,
468 F. Supp. 2d 1127 (N.D. Cal. 2006)....................11

*Rite-Nail Packaging v. Berryfast, Inc.*,
706 F.2d 933 (9th Cir. 1983)....................5, 6

*Shelley v. Board of Trade of San Francisco*,
87 Cal. App. 344 (1927)....................8

*St. Regis Paper Co. v. Royal Industries*,
552 F.2d 309 (9th Cir. 1977)....................5, 6

*Steinman v. Malamed*
185 Cal. App. 4th 1550 (2010)....................8, 9, 10

*Studiengesellschaft Kohle v. Shell Oil Co.*, 112 F.3d 1561 (Fed. Cir. 1997) .......... 5

*The Texas Oil Co. v. Todd*, 19 Cal. App. 2d 174 (1937) .......... 9

*Transitron Elec. Corp. v. Hughes Aircraft Co.*, 649 F.2d 871 (1st Cir.1981) .......... 7

*Wang Labs., Inc. v. Ma Labs., Inc.*, No. C 95-2274 SC, 1995 WL 729298 (N.D. Cal. Dec. 1, 1995) .......... 5, 6

*Western Gulf Oil Co. v. Title Ins. & Tr. Co.* 92 Cal. App. 2d 257 (1949). .......... 8, 9, 10

*Zenith Lab, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508 (3d Cir. 1976) .......... 7

**Statutes**

California Code of Civil Procedure § 337(1) .......... 3, 11

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on August 8, 2019 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Plaintiff Tessera, Inc. ("Tessera") moves pursuant to Federal Rule of Civil Procedure 56 for partial summary judgment on Toshiba Corporation's ("Toshiba") Fourth Cause of Action (Covenant of Good Faith and Fair Dealing) to the extent it seeks a refund of previously-paid royalties. Tessera's motion is based on this Notice of Motion; the accompanying Memorandum of Points and Authorities; the Declaration of Michael Harbour; the exhibits thereto; the files and pleadings in this Action; the arguments to be made at the hearing on this Motion; and all other matters of which the Court may take judicial notice.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This is a breach of contract action in which Tessera is seeking recovery of unpaid royalties that it believes are due under its 1999 TCC® License Agreement ("Agreement") with Toshiba. After paying royalties for more than a decade, Toshiba abruptly stopped paying in 2013, and Tessera filed this action. As part of a "best defense is a good offense" strategy, Toshiba is not only seeking to avoid paying royalties after 2013, but has also asserted a counterclaim in which it is seeking a windfall by claiming that it is entitled to a refund for amounts that it previously paid voluntarily and intentionally before this action was filed. The undisputed facts establish that Toshiba is not entitled to any such refund as a matter of law for at least four independent reasons.

First, as both the Ninth Circuit and this District repeatedly have held, patent law does not allow a licensee to recoup previously paid royalties on the ground that the payments were made on non-infringing products. Yet that is exactly what Toshiba is attempting to do here. Toshiba alleges it paid royalties for a nearly three-year period during which, according to Toshiba, none of its products infringed. The law, however, is clear: a licensee who wishes to challenge the scope of the licensed patents must take affirmative steps to adjudicate the issue of infringement by either bringing suit or giving notice of non-infringement and ceasing payment. It cannot continue to enjoy the benefits of the license and seek a refund later. Here, it is undisputed that Toshiba did not

cease paying royalties based on alleged non-infringement until 2013. All royalties paid prior to then are non-refundable as a matter of law.

Second, the doctrine of voluntary payment bars Toshiba from seeking a refund of royalty payments. Toshiba made the royalty payments for which it seeks restitution voluntarily, with full knowledge of the relevant facts. Under black-letter California law, such voluntary payments cannot be recovered. Toshiba claims to have made two mistakes when it made the payments for which it seeks a refund, but there is no evidence of any mistake. Toshiba claims that it was previously paying royalties because it was practicing Tessera's U.S. Patent No. 5,679,977 ("the '977 Patent"), but mistakenly paid royalties after that patent expired in September 2010. But Toshiba knew when the patent expired. It was not only obvious on the face of the patent, [redacted] and Toshiba's 30(b)(6) witness admitted in deposition that Toshiba knew in 2010 that the patent had expired but decided to continue paying royalties. Toshiba also alleges that it made a mistake when it paid royalties on "large-pitch package products," but Toshiba knew the pitch size of its own products. Toshiba's allegation that Tessera "demanded" royalty payments also does not mean that Toshiba's decision to pay those royalties was not voluntary. If Toshiba believed these demands were improper, it could have ceased making payment or brought suit to clarify its obligations. Instead, it continued to pay without objection. Because it is undisputed that Toshiba had full knowledge of the relevant facts when it made the prior payments, summary judgment is appropriate.

Third, Toshiba has not identified any actions by Tessera that would qualify as a breach of the implied covenant of good faith and fair dealing, the legal theory under which Toshiba is seeking its refund. The implied covenant is based on the principle that one contracting party cannot unfairly frustrate the other party's right to receive the benefits of the contract. Toshiba entered into the Agreement to obtain access to certain Tessera technology and the freedom to operate without fear of a patent infringement claim by Tessera concerning the patents and patent applications at issue. This is exactly what it received. There is no evidence that Tessera somehow deprived Toshiba of that freedom to operate. Tessera did not sue Toshiba or its customers for patent infringement nor otherwise frustrate the benefits of the contract.

Fourth, Toshiba's implied covenant counterclaim, the only basis for its claimed refund, is barred by the four-year statute of limitations provided in California Code of Civil Procedure § 337(1). Toshiba filed its implied covenant counterclaim on June 18, 2015, more than four years after all the relevant events had occurred. The '977 patent expired in 2010, and Toshiba continued to pay royalties after that point, including on "large-pitch" packages. Toshiba's breach of contract claim is thus time barred.

## II. STATEMENT OF FACTS

In 1999, the parties entered into a license agreement under which Tessera provided Toshiba with access to Tessera's semiconductor integrated circuit packaging technology in exchange for Toshiba's payment of royalties. TCC License Agreement, Harbour Decl., Ex. 1 at 633-652. The recitations on page 1 of the parties' Agreement state that Tessera owned certain patents and patent applications relating to semiconductor integrated circuit packaging and that Toshiba "desires to obtain a non-exclusive license under Tessera's said certain patents and patent applications." *Id.* at 633. Thus, the primary benefit conferred to Toshiba under the Agreement was a non-exclusive license that provided Toshiba with access to certain Tessera technology and the freedom to operate without fear of a patent infringement suit by Tessera.

Toshiba paid royalties under the Agreement from 1999 through the second quarter of 2013 even though Toshiba believed in 2010 that the relevant Tessera patents had expired. Ikuko Shimagawara, the Department Manager of Toshiba's Intellectual Property Development Department of Semiconductor & Storage Product Company, confirmed this was Toshiba's understanding at her 30(b)(6) deposition. *See* Harbour Decl., Ex. 2 at 149:6-10 ("Q. Is it correct that between October 2010 and the year 2013, Toshiba paid royalties to Tessera even though Toshiba did not believe it was infringing any valid Tessera patent? A. Yes, for a specific period of time."). *See also id.* at 150:7-17 ("[T]he patents that we thought we were using expired in 2010. Therefore, at that point in time, our understanding is – was that there was no patent – that we were using."). [REDACTED] Harbour Decl., Ex. 3 at 7839.

On November 27, 2013, Toshiba sent a letter to Tessera stating that it would no longer pay any royalties to Tessera, and enclosed a royalty report for the third quarter of 2013 showing the amount of $0 paid. Harbour Decl., Ex. 4 at 1726-1728. Toshiba has paid no royalties since. After trying to reach a business resolution, Tessera commenced this litigation on May 12, 2015.

Toshiba filed several counter claims which include a Fourth Count for "Breach of Implied Warranty of Good Faith and Fair Dealing." This count reads, in relevant part, as follows:

> 33. The implied covenant also extends to amounts paid erroneously and disputes regarding payment obligations. During the course of the TCC License Agreement, Toshiba made royalty payments to Tessera for certain large-pitch package products that were not captured by the TCC License Agreement. Tessera also demanded that Toshiba continue making royalty payments after the expiration of certain patents and upon the assurance that Tessera would provide evidence that Toshiba is covered by a valid, unexpired, and enforceable TCC-Licensed Patent. Tessera has failed to provide any such evidence. Dkt. No. 90-1 at 18:21-28
>
> 34. As a result of the mistaken royalty payments for the large-pitch package products and overpayment of royalties in compliance with Tessera's demands for post-expiration royalties, Toshiba paid royalties to Tessera in excess of the amount actually due and owing under the TCC License Agreement. Tessera has therefore been unjustly enriched by the amount of such overpayments. *Id.* at 19:1-18.[1]

## III. TOSHIBA CANNOT SEEK REFUND OF ROYALTIES ALREADY PAID

The focus of this motion is Toshiba's claim that it is entitled to restitution of royalty amounts that Toshiba allegedly "mistakenly" paid or paid "upon demand" by Tessera. Toshiba made the royalty payments at issue between October 2010, by which time certain patents had expired, and June 2013, after which Toshiba ceased all royalty payments. Toshiba is not entitled to a refund as a matter of law for the reasons set forth below.

### A. Federal Patent Law Prohibits Refund of Royalty Payments

Toshiba claims that it is owed a refund for royalties it paid after October 2010 on the grounds that none of its products infringed any Tessera patent after that date. But even if that were true, Toshiba cannot seek a refund of royalties. It is "settled law" that a licensee cannot "recoup or offset past royalties if the products made under the license agreement are later

[1] Toshiba's claim is based on two categories of alleged wrongdoing: Tessera's allegedly improper exercise of its audit rights (¶¶ 31-32); and Tessera's retention of Toshiba's royalty payments (¶¶ 33-35). While none of the alleged conduct constitutes bad faith, this motion does not address the audit claims because they are not the basis for Toshiba's refund request.

determined to be non-infringing." *Applied Elastometrics, Inc. v. Z-Man Fishing*, 521 F. Supp. 2d 1031, 1039 (N.D. Cal. 2007) (citations omitted); *see also Wang Labs., Inc. v. Ma Labs., Inc.*, No. C 95-2274 SC, 1995 WL 729298, at *11 (N.D. Cal. Dec. 1, 1995) (federal patent law bars refunds for royalties paid on products "later determined to be noninfringing"). Rather, to avoid royalty payments, a licensee must "take[] an affirmative step that would prompt the early adjudication" of the patent's enforceability, such as "filing an action" challenging the scope or validity of the patent or "notifying the licensor that the payments were being stopped" because the patent was believed to be non-infringing or invalid. *See Rite-Nail Packaging v. Berryfast, Inc*., 706 F.2d 933, 936 (9th Cir. 1983); *MedImmune, LLC v. PDL BioPharma, Inc*., No. C 08-5590 JF HRL, 2011 WL 61191, at *23 (N.D. Cal. Jan. 7, 2011) (licensee must "(i) actually cease payment of royalties, and (ii) provide notice to the licensor that the reason for ceasing payment is that it believes the patents are invalid.") (citing *Studiengesellschaft Kohle v. Shell Oil Co*., 112 F.3d 1561 (Fed. Cir. 1997)).

This rule is based on the following "policy considerations":

> The possibility of obtaining a refund of all royalties paid might induce a manufacturer to accept a license based on a patent of doubtful validity, derive the benefits of suppressed competition which the patent affords, and challenge validity only after the patent's expiration. The licensee would have a chance to regain all the royalties paid while having enjoyed the fruits of the license agreement.

*Applied Elastometrics*, 521 F. Supp. 2d at 1040 (quoting *St. Regis Paper Co. v. Royal Industries*, 552 F.2d 309, 314 (9th Cir. 1977)). Courts in this district have held that this same rationale bars recovery of royalties paid on products that are determined to be non-infringing. *See, e.g., id; Wang*, 1995 WL 729298, at *11. For example, in *Wang*, the licensee attempted to both recoup and offset royalties it had paid for a year on non-infringing products. Even though the license was infringement based, and a court had determined that the licensee's "product [did] not infringe [the licensor's] patent," the court still held that past royalty payments were non-recoverable as a matter of law. *Id.* (granting summary judgment).

The same is true here. It is undisputed that Toshiba did not take any affirmative step to avoid royalty payments until November 27, 2013, when it sent Tessera a letter indicating it was paying no royalties and asserting that it "does not believe any Toshiba product is covered by any claim of any valid, unexpired 'Tessera Patent.'" Harbour Decl., Ex. 4 at 1726. Moreover, as in

*Applied Elastrometrics* and *Wang*, "the agreement here provides that there is no warranty or representation regarding the validity or scope of the patent rights." *Applied Elastometrics*, 521 F. Supp. 2d at 1040; Harbour Decl., Ex. 1 at 641 ("Licensee acknowledges and agrees that the rights and licenses . . . are provided to Licensee 'AS IS,' with no warranty of any kind."). Thus, Toshiba "assumed the risk" that Tessera's patents "might, at some future date, be found not to include the licensed products." *Applied Elastometrics*, 521 F. Supp. 2d at 1040.

If Toshiba had wished to contest royalty payments on the basis of non-infringement beginning in 2010, it should have sent its letter and ceased payment in 2010 instead of waiting three years. As Toshiba's counsel explained at oral argument before the Ninth Circuit in this action, Toshiba chose to delay because it wanted to keep the right to operate freely under the agreement and avoid litigation:

> JUDGE ROSENTHAL: So the language of the 1999 agreement says this agreement extends to the point that the last patent covered expires. . . . What do we do with that?
>
> [TOSHIBA ATTORNEY] MR. HAWES: That means after we stopped using [Tessera's] patents, we had the choice if, we wanted to, to introduce new products that used patents that were still around. Right? So we kept that right, but we don't have to pay royalties when we're not using their patents which is the --
>
> JUDGE HAWKINS: So why did you?
>
> MR. HAWES: Because we didn't -- they said you're using them. We said we're not. We were like, "Let's try to work this out. We don't want litigation."
>
> ***
>
> And, you know, so at that point in time, yes, we had our position, but we don't know if we go into court whether we're 100 percent going to win.

Harbour Decl., Ex. 5 at 32:3-33:4. In short, Toshiba did not "take[] an affirmative step that would prompt the early adjudication" of infringement, meaning "filing an action" or "notifying [Tessera] that the payments were being stopped" on the basis of non-infringement. *Rite-Nail Packaging*, 706 F.2d at 936. Instead, it purposefully delayed while it continued to enjoy the benefits of the license and only later sought a refund. This is precisely what patent law prohibits. *St. Regis Paper Co.*, 552 F.2d at 314.

Toshiba is thus not entitled to a refund as a matter of law. Nor can it avoid this result by asserting that it paid "by mistake" or upon "demand" by Tessera (cross-claim ¶¶ 33, 35). Not only

is this inconsistent with the representations Toshiba made to the Ninth Circuit and, as explained below, wholly unsupported by the record, it is also irrelevant. While some courts have recognized an exception to the no-refund rule where the licensee "was induced to accept the license as a result of fraud," a mere "'mistake'" in making payment is not sufficient. *Transitron Elec. Corp. v. Hughes Aircraft Co*., 649 F.2d 871, 875 (1st Cir.1981); *see also Erie Tech. Prods. v. JFD Elecs.*, 1978 U.S. Dist. LEXIS 19704, at *15 (E.D.N.Y. Feb. 6, 1978) (licensee cannot seek refund based on "claim that the payment of royalties constituted a mistake") (citing *Zenith Lab, Inc. v. Carter-Wallace, Inc*., 530 F.2d 508, 513, 514 (3d Cir. 1976)). Here, there is no allegation, let alone evidence, that Tessera fraudulently induced Toshiba to enter the license agreement.

**B. <u>California Law Prohibits Refund of Payments Voluntarily Made</u>**

A separate and independent reason why summary adjudication is appropriate is that Toshiba made the royalty payments at issue voluntarily and with full knowledge of the relevant facts. Under the "voluntary payment" doctrine, such royalty payments are not subject to a refund as a matter of law. "The voluntary payment doctrine bars the recovery of money that was voluntarily paid with full knowledge of the facts." *Parino v. Bidrack*, 838 F. Supp. 2d 900, 908 (N.D. Cal. 2011). *See also American Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961) (referencing the "familiar rule that a payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back"). Toshiba claims that it is entitled to a refund because of two alleged mistakes and because Tessera made demands for the payments. The undisputed evidence refutes each of these theories.

First, Toshiba argues that it made a mistake when it paid royalties on "large-pitch" products. As an initial matter, Toshiba offers no support for its position that "large-pitch" products are not covered, and the Agreement contains no exclusion based on pitch size. Regardless, it is beyond dispute that Toshiba knew the pitch size of its own products, including at the time it made the allegedly mistaken payments. It was Toshiba that prepared detailed royalty reports based on Toshiba's own knowledge of the details of its products, including pitch size. Toshiba maintains the confidentiality of its technical documentation and manufacturing processes. *See* Harbour Decl., Ex. 6 at 55:2-4, 58:3-5. So Toshiba, and only Toshiba, knew these details of

its products and, with that knowledge, Toshiba decided to pay royalties on large-pitch products.

Second, Toshiba claimed in discovery that it made a mistake paying royalties after the '977 Patent expired in October 2010 because it purportedly believed the '977 Patent would not expire until October 2014. Harbour Decl., Ex. 7 at 8:24-28, 9:1-9. But as noted above, Toshiba's own 30(b)(6) witness admitted in her binding testimony that Toshiba knew in September 2010 that the '977 Patent had expired but continued paying royalties anyway until 2013. *See* Harbour Decl., Ex. 2 at 149:6-10, 150:7-17. [REDACTED] . Harbour Decl., Ex. 3 at 7839. In any event, the expiration date is self-evident from the face of the patent.

Third, Toshiba cannot contend that the royalty payments that it made were somehow involuntary because of alleged "demands and assurances" made by Tessera. Not only is this theory flatly inconsistent with Toshiba's claim that it paid by "mistake," but the voluntary payment doctrine applies even when a party's payment is made in response to the demand of another party. *Shelley v. Board of Trade of San Francisco*, 87 Cal. App. 344, 349 (1927) ("The principle is elementary that, if a person knowingly submits to a demand, however improper, by paying that which is demanded instead of invoking the remedy which the law affords him against such demands, such payment is voluntary and the recovery thereof cannot be had.").

For example, in *Western Gulf Oil Co. v. Title Ins. & Tr. Co.,* the defendant demanded that plaintiff pay certain withheld royalty amounts on an oil lease within sixty days and threatened forfeiture of the lease if the demand was not met. 92 Cal. App. 2d 257, 260-61 (1949). Plaintiff eventually relented and paid, but brought suit several months later to recoup these payments. *Id.* at 265. The court held that, because "[t]he payments were finally made and accepted without any conditions or reservations," they were voluntary and could not be recovered even though the defendant had demanded payment and threatened legal action. *Id.* at 264. Similarly, in *Steinman v. Malamed*, the defendant attempted to pay disputed amounts "under protest," but then, after plaintiff objected, wired the payments "without reservation." 185 Cal. App. 4th 1550, 1558. The payments were thus voluntary and non-recoverable. *Id.*

The facts here are even more compelling than in *Western Gulf* or *Steinman*. There is no evidence that Tessera threatened Toshiba with forfeiture if it did not continue to pay royalties, nor is there any evidence that Toshiba ever attempted to pay royalties "under protest." For nearly three years after it now contends no royalties were due, Toshiba unilaterally performed specific calculations of royalties (down to counting billable pins of specific Toshiba packages), prepared royalty reports, provided the royalty reports to Tessera, and paid royalties according to the reports without stating that such payments were being made under protest. Indeed, none of the royalty reports prepared and submitted by Toshiba indicate in any way that the payments were being made subject to certain "conditions or reservations." *Western Gulf Oil Co.,* 92 Cal. App. 2d at 264; *see, e.g.*, Harbour Decl, Ex. 8 (Toshiba royalty reports).

Even if Toshiba had paid "truly 'under protest,' that would not necessarily make the payment involuntary, as more is required." *Steinman*, 185 Cal. App. 4th at 1558. Specifically, "'there must have been no other adequate means available to prevent the loss.'" *Id.* (quoting *Western Gulf*, 92 Cal. App. 2d at 264). Here, Toshiba clearly had such means. It could have stopped paying (as it did in 2013) or it could have "commenced action immediately" to clarify the scope of its obligations. *Western Gulf*, 92 Cal. App. 2d at 264; *see also The Texas Oil Co. v. Todd*, 19 Cal. App. 2d 174, 188 (1937) (payment voluntary where party could "have paid . . . under protest, and then . . . brought suit for declaratory relief"). It did neither.

Moreover, Toshiba's "protracted silence" of nearly three years, during which it paid [REDACTED] in royalties (Harbour Decl. ¶ 10, Ex. 8) without taking any action to challenge or recoup any portion of these payments, demonstrates that Toshiba "did not make the payment under duress." *Steinman*, 185 Cal. App. 4th at 1560. "Presumably, given the large amount at issue, a reasonably prudent person under duress would have used this interval to take some protective action, such as offering a counter disposition amount, seeking declaratory relief pursuant to section 1060, or interpleading the money." *Id.* Toshiba did none of these things. Moreover, as a sophisticated company, Toshiba could decide for itself whether to continue paying royalties after 2010 regardless of whatever "demands" or "assurances" Tessera supposedly made.

Indeed, as Toshiba's counsel explained to the Ninth Circuit, Toshiba made payments so

that it could continue to enjoy the protections of the license and "avoid litigation until" it was prepared to make an infringement challenge. *Western Gulf*, 92 Cal. App. 2d at 265; Harbour Decl., Ex. 5 at 32:3-33:4. In other words, Toshiba was not coerced into paying royalties; it simply made a business decision. And regardless of its motives, the fact that Toshiba sat on its hands for nearly three years demonstrates that the decision was voluntary. *Steinman*, 185 Cal. App. 4th at 1560. Toshiba is thus not entitled to a refund as a matter of law.

### C. <u>Tessera Did Not "Breach" The Implied Covenant Of Good Faith</u>

A third independent reason for summary judgment is that there is no evidence that Tessera did anything to deprive Toshiba of the benefits of the Agreement. "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original). The California Court of Appeal explained this cause of action in *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990):

> [A]llegations which assert such a claim (for breach of the covenant of good faith and fair dealing) must show that the conduct of the defendant . . . demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.

Toshiba has not pointed to or offered any evidence of any affirmative act by Tessera which deprived Toshiba of the benefits of the Agreement, namely Toshiba's obtaining of a non-exclusive license under certain of Tessera's patents and patent applications. When Toshiba entered into the Agreement, Toshiba obtained the benefit of being able to operate with peace from Tessera, without fear that Tessera might sue it for infringement of the relevant patents.

Tessera did nothing to deprive Toshiba of that benefit. Tessera did not sue Toshiba for patent infringement, or do anything to cause Toshiba to have any "mistaken" beliefs about when certain patents expired or about whether it should pay royalties on large-pitch products. Those "mistakes," even if true, were unilaterally made by Toshiba, without any bad faith action by Tessera causing those "mistakes." [redacted]

[redacted] Likewise, the mere fact that Tessera may have had different views of Toshiba's royalty obligations and supposedly "demanded" that Toshiba continue making payments after October 2010 were not bad faith affirmative actions which deprived Toshiba of the benefits of the contract. As noted above, Tessera did not force Toshiba to make any royalty payments. That decision ultimately rested with Toshiba and Toshiba alone. And even if there were alleged mistakes or disagreements concerning certain limited royalty payments, such mistakes or disagreements did not threaten to deprive Toshiba of its license rights. As a result, Toshiba's implied covenant claim fails as a matter of law.

### D. <u>Toshiba's Counterclaim Is Barred By The Statute of Limitations</u>

The relevant statute of limitations for Toshiba's implied covenant counterclaim is four years because the counterclaim is based upon a written instrument. *See* California Code of Civil Procedure § 337(1); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 220-221 (1991). The limitations period begins to run once all essential elements are present and a remedy is available. *See Glue-Fold Inc. v. Slautterback Corp.*, 82 Cal. App. 4th 1018, 1029 (2000). Here, there is no dispute that all the relevant events had occurred as of at least October 2010 based on Toshiba's own allegations. At that point, the allegedly relevant patents had expired, but Toshiba continued paying royalties (including on large-pitch packages). Yet Toshiba did not assert its bad faith claim until June 18, 2015—well after the four-year limitations period had run.

There is thus no dispute that Toshiba's claim for breach is time barred. Nor can Toshiba avoid this result by claiming that the limitations period was tolled because Toshiba was somehow ignorant of the relevant facts. The discovery rule only applies where "'circumstances prevent [the plaintiff] from knowing they have been harmed.'" *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1135 (N.D. Cal. 2006) (quoting *Gryczman v. 4550 Pico Partners, Ltd.*, 107 Cal. App. 4th 1, 5-6 (2003)). Here, Toshiba has not identified any "secretive breach" committed by Tessera that would have somehow prevented it from learning of the relevant facts. And even assuming the discovery rule did apply, there is no dispute that Toshiba knew or reasonably should have known all the relevant facts in 2010. The expiration date of the patent is evident on its face, and Toshiba knew it was paying royalties even after the allegedly relevant Tessera patents had

expired. Toshiba also knew that it was paying royalties on large-pitch packages since it certainly knew the technical characteristics of its own products.

Thus Toshiba was aware back in 2010 of all facts on which it now seeks a refund under the guise of a breach of the implied covenant of good faith and fair dealing claim. Since this was more than four years before it brought its claim, the claim is time-barred as a matter of law.

## IV. CONCLUSION

Toshiba is not entitled to a royalty refund based on Tessera's alleged breach of the implied covenant. Such a refund is prohibited under federal patent law barring refunds where the plaintiff took no affirmative steps to bring the infringement issue to a head and under California law barring refunds of voluntarily-made payments. Toshiba's claim also fails because Tessera did not deprive Toshiba of the benefits of the Agreement and because Toshiba filed its counterclaim too late, beyond the statute of limitations. The Court should thus grant partial summary judgment against Toshiba's cross-claim for a refund of previously-paid royalties.

Dated: February 14, 2019

Respectfully submitted,

IRELL & MANELLA LLP

By:/s/ A. Matthew Ashley

A. Matthew Ashely
Attorneys for Plaintiff
TESSERA, INC.