# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

Case No. 15-cv-02543-BLF

TESSERA, INC.,

    Plaintiff,

v.

TOSHIBA CORPORATION,

    Defendant.

**REDACTED ORDER (1) GRANTING TESSERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, (2) DENYING TOSHIBA'S MOTION FOR SUMMARY JUDGMENT, AND (3) GRANTING IN PART AND DENYING IN PART TOSHIBA'S MOTION TO STRIKE**

[Re: ECF 318, 378, 380]

    Plaintiff Tessera, Inc. ("Tessera") and Defendant Toshiba Corporation ("Toshiba") have brought counter suits against each other seeking to resolve their dispute as to the proper measure of royalty payments due under their license agreement and its addenda. Before the Court are the parties' second round of cross motions for summary judgment and Toshiba's motion to strike two of Tessera's expert reports. For the reasons discussed below, the Court GRANTS Tessera's motion for partial summary judgment, DENIES Toshiba's motion for summary judgment, and GRANTS IN PART and DENIES IN PART Toshiba's motion to strike.

## I. BACKGROUND

### A. Factual Background

    In 1999, Tessera and Toshiba signed the patent-infringement-based Tessera Compliant Chip ("TCC") Licensing Agreement (the "1999 Agreement" or "Agreement") whereby Tessera granted Toshiba "a non-exclusive, non-transferable, non-sublicensable, limited license to the Tessera Patents to package and/or assemble [integrated circuits ('ICs')] into TCCs and use or sell

such TCCs world wide." 1999 Agreement, Decl. of Amy K. Liang ("Liang Decl.") Ex. 1, at 1, ECF 380-2, 403-6. The 1999 Agreement defined "Tessera Patent" as "Patent(s) or claims within such Patent(s) for the design, manufacture, and/or assembly of TCCs . . . owned by Tessera prior to expiration or termination of th[e] Agreement." 1999 Agreement ¶ I.D. The Tessera Patents "consist[ed] of those issued Patents set forth in Attachment A," which was to be "amended from time to time to include further issued Patents directly related to the scope of the license grant." 1999 Agreement ¶ I.D.

In addition to the license fee, Toshiba also agreed to pay Tessera "running royalties . . . during the term of this Agreement . . . per Billable Pin for TCCs made by [Toshiba]." 1999 Agreement ¶ III.B. The 1999 Agreement was to "remain in full force until the expiration of the last to expire of any Tessera Patent." 1999 Agreement ¶ X.A. Notwithstanding, Toshiba could terminate the agreement "by reasons of non-use of relevant Tessera Patents licensed hereunder." 1999 Agreement ¶ X.A.

Around 2001, Tessera received a favorable claim construction for claims on two Tessera Patents: U.S. Patent Nos. 5,679,977 (the "'977 Patent") and 5,852,326 (the "'326 Patent"). Toshiba Opp'n to Tessera's Mot. for Partial Summ. J. ("Toshiba Opp.") at 2, ECF 403-4, 404-2. In 2002, following the favorable claim construction, the parties amended the 1999 Agreement (the "2002 Amendment") to clarify that Toshiba's F-µBGA Packages were covered by the Agreement. 2002 Amendment, Decl. of A. Matthew Ashley ("Ashley Decl.") Ex. 11, at 1, ECF 405-23, 406-27; *see* Toshiba Opp. at 2. The 2002 Amendment further defined F-µBGA Packages as

> a type of TCC which incorporates at least one IC device having electrical contacts on a front surface of such IC device, where such contact bearing front surface faces away from a package substrate, the substrate being attached to the IC device with a die attach material and having at least one substrate terminal within the periphery of the IC device and such at least one substrate terminal being electrically connected to one of the electrical contacts by a bonding wire.

2002 Amendment ¶ K. In addition, the 2002 Amendment included four examples of F-µBGA Packages (Type 1 to Type 4 F-µBGA) that Toshiba produced at that time and the parties

agreed were covered by the Agreement.[1]  2002 Amendment ¶ K.  The 2002 Amendment further provided that Toshiba would "pay running royalties for its exercise of the license granted . . . for F-µBGA Packages."  2002 Amendment ¶ 5.C.

In 2005, the parties executed a second amendment to the 1999 Agreement (the "2005 Amendment") "to resolve the then-existing dispute regarding Toshiba's past due royalties under the [1999 Agreement]."  2005 Amendment, Ashley Decl. Ex. 12, at 1, ECF 405-24, 406-28. Among other things, the 2005 Amendment affirmed that Toshiba would pay royalties for F-µBGA Packages and capped the number of Billable Pins for Type 3 and Type 4 F-µBGA Packages.  2005 Amendment ¶ C.c.

On February 12, 2016, Toshiba sent a letter to Tessera terminating the Agreement pursuant to Section X.A, which provided that "[Toshiba] may terminate th[e] Agreement by reason of non-use of the relevant Tessera Patents licensed hereunder."  Termination Letter, Lee Decl. Ex. 40, at 1, ECF 403-47, 404-4.  The parties disagree whether Toshiba properly terminated the Agreement.  *See* Order re First Mots. for Summ. J. ("First MSJ Order") at 19-20, ECF 232.

## B.   Procedural Background

On November 7, 2016, this Court ruled on the parties' first round of cross motions for summary judgment, holding that the royalty obligations under the 1999 Agreement and the 2002 Amendment are triggered by patent infringement.  First MSJ Order at 18-19.  The Court, therefore, found that Toshiba only owes royalties if Toshiba practices the claims of an unexpired, valid, and enforceable licensed Tessera Patent.  First MSJ Order at 21.  In addition, the Court found that "[u]nder the 2002 Amendment, Toshiba gave up the fight over the royalties due, put the F-µBGA Packages under the umbrella of the 1999 Agreement, and, upon the expiration of the patents, Toshiba would no longer be obligated to pay royalties."  First MSJ Order at 18.  The Court, furthermore, denied Toshiba's motion for partial summary judgment as to the meaning of

---

[1] The four examples of F-µBGA Packages include: "[1] a polymide package substrate and an elastomer die attach ('Type 1 F-µBGA'); [2] a polymide package substrate and an epoxy paste die attach ('Type 2 F-µBGA'); [3] a BT package substrate and an elastomer die attach ('Type 3 F-µBGA'); and [4] a BT package substrate and an epoxy die attach ('Type 4 F-µBGA')."  2002 Amendment ¶ K.

"relevant Tessera Patents" and the issue of whether Toshiba properly terminated the 1999 Agreement. First MSJ Order at 20.

On November 17, 2016, given the Court's summary judgment order, Magistrate Judge Nathaniel M. Cousins ordered that the Patent Local Rules ("PLRs") would apply to the discovery process. ECF 243. On November 29, 2016, the Court clarified that "to prove breach of contract, Tessera must prove that Toshiba infringes or infringed the patents covered by the contract." Order re Joint Status Report at 1, ECF 253. Tessera stated that it did not intend to present patent infringement contentions, but the Court nevertheless set a December 2, 2016 deadline for Tessera to identify any asserted patents and provide disclosures pursuant to the PLRs. Order re Joint Status Report, at 2. Tessera did not identify any asserted patents by the December 2, 2016 deadline. On January 20, 2017, Tessera served the expert reports of Dr. John C. Bravman (the "Bravman Report") and Jeffrey H. Kinrich (the "Kinrich Report"). ECF 282, 283.

### C. Motions Before the Court

The parties now submit their second round of summary judgment motions, and Toshiba moves to strike the Bravman and Kinrich Reports. First, Tessera seeks summary judgment on Toshiba's fourth cause of action (Covenant of Good Faith and Fair Dealing) to the extent that Toshiba seeks a refund of previously-paid royalties. Tessera Mot. For Summ. J. ("Tessera MSJ") at iv, ECF 377-4, 378. Toshiba opposes the motion, arguing that the 1999 Agreement is unenforceable after September 24, 2010, Tessera breached the implied covenant of good faith and fair dealing, Tessera was unjustly enriched, Toshiba's royalty payments were involuntary, and Toshiba's claim for refund payments is timely. Toshiba Opp. at 5-15.

Second, Toshiba moves for summary judgment as to Tessera's first two causes of action (Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing) regarding Toshiba's royalty obligations, the audit provision, and Toshiba's termination of the 1999 Agreement. Toshiba Mot. for Summ. J. ("Toshiba MSJ") at 1, ECF 376-4, 380. In addition, Toshiba moves for summary judgment as to its second and third counterclaims for declaratory judgment regarding dispute resolution of the financial audits and its termination of the 1999 Agreement for non-use of the relevant Tessera Patents. Toshiba MSJ at 1. Tessera opposes the

motion, arguing that the statute of limitations has been tolled for its claims and summary judgment is not appropriate because there are disputed issues of material facts. Tessera Opp. to Toshiba MSJ ("Tessera Opp. to MSJ") at 3-14, ECF 405-4, 406.

Lastly, Toshiba moves to strike the Bravman and Kinrich Reports, arguing that the expert reports contain infringement analysis and Tessera cannot allege patent infringement because Tessera did not comply with the PLRs. *See generally* Toshiba Mot. to Strike ("Mot. to Strike"), ECF 317-2, 318. Tessera counters that it did not need to comply with the PLRs to serve its expert reports because Toshiba admitted that its products infringed certain Tessera Patents under the 2002 Amendment. *See generally* Tessera Opp. to Mot. to Strike ("Tessera Opp. to Strike"), ECF 407-4, 408.

The Court addresses each motion in turn.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Partial summary judgment that falls short of a final determination, even of a single claim, is authorized by Rule 56 in order to limit the issues to be tried." *State Farm Fire & Cas. Co. v. Geary*, 699 F. Supp. 756, 759 (N.D. Cal. 1987). The moving party "bears the burden of showing there is no material factual dispute," *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1004 (N.D. Cal. 2010), by "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In judging evidence at the summary judgment stage, "the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party." *First Pac. Networks, Inc. v. Atl. Mut. Ins. Co.*, 891 F. Supp. 510, 513-14 (N.D. Cal. 1995). For a court to find that a genuine dispute of material fact exists, "there must be enough doubt for a reasonable trier of fact to find for the [non-moving

United States District Court
Northern District of California

party].” *Corales v. Bennett*, 567 F.3d 554, 562 (9th Cir. 2009).

## III.  TESSERA'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Tessera seeks summary judgment as to Toshiba's claim that it should receive a refund for its royalty payments that were made after the expiration of the '977 and '326 Patents.

### A.  Background

Under the 1999 Agreement and its addenda, Toshiba paid royalties to Tessera for its products that practiced the '977 and '326 Patents.  Toshiba Opp. at 3.  On September 24, 2010, the '977 Patent and '326 Patent expired.  Liang Decl., Decl. of Sean Y. Lee ("Lee Decl.") Ex. 25 ¶ 5, ECF 403-31, 404-3.  On November 27, 2013, Toshiba informed Tessera that it ceased paying royalties under the 1999 Agreement because "Toshiba d[id] not believe any Toshiba product [wa]s covered by a claim of any valid, unexpired 'Tessera Patent.'"  Toshiba Royalty Letter, Decl. of Michael Harbour ("Harbour Decl.") Ex. 4, at 1, ECF 377-8, 379-4.  Toshiba also requested that "Tessera refund all royalties paid for [Toshiba's] sales after October 1, 2010, when the last of the 'Tessera Patents' covering Toshiba products expired."  Toshiba Royalty Letter at 1.  Tessera did not refund any of Toshiba's royalty payments that were paid after October 1, 2010.  *See* Toshiba Amend. Ans., Counterclaim ¶¶ 29-35, ECF 90-1.

In its amended answer, Toshiba brings a counterclaim against Tessera to recoup these payments.  Specifically, Toshiba alleges that Tessera breached the implied warranty of good faith and fair dealing by retaining Toshiba's royalty payments paid for large-pitch package products after the expiration of certain Tessera Patents.  Toshiba Amend. Ans., Counterclaim ¶¶ 29-35. According to Toshiba, it overpaid royalties to Tessera and is entitled to a refund because: (1) Toshiba mistakenly paid royalties for certain large-pitch packaging products that were not covered by the Agreement, and (2) "Tessera . . . demanded that Toshiba continue making royalty payments after the expiration of certain patents" and assured Tessera that it had evidence that a valid, unexpired, and enforceable patent under the 1999 Agreement covered Toshiba's products. Toshiba Amend. Ans., Counterclaim ¶¶ 33-34.[2]

---

[2] Toshiba also alleges that Tessera breached the implied warranty of good faith and fair dealing by selecting "a partial auditor and attempting to conduct an unduly broad audit in violation of the

Tessera now moves for partial summary judgment on Toshiba's request for a refund of royalty payments. *See generally* Tessera MSJ. Tessera argues that Toshiba's request should be denied because (1) Toshiba's claims are barred by federal patent law, (2) Toshiba's payments were voluntarily made, (3) Toshiba's refund claims are untimely, and (4) Tessera's actions did not constitute a breach of the implied covenant of good faith. Tessera MSJ at 4-11. The Court agrees that Toshiba's refund request is barred by federal patent law, and therefore the Court does not address Tessera's remaining arguments. For the reasons stated below, Tessera's Motion for Partial Summary Judgment on Toshiba's Request for a Refund of Royalty Payments is GRANTED.

### B. Federal Patent Law

"It is well settled law that a determination that a patent which is the subject matter of a License Agreement is invalid does not entitle the licensee to recoup royalties already paid." *Applied Elastomerics, Inc. v. Z-Man Fishing Prod., Inc.*, 521 F. Supp. 2d 1031, 1039 (N.D. Cal. 2007) (quoting *Wang Labs., Inc. v. Ma Labs., Inc.*, No. C 95-2274 SC, 1995 WL 729298, at *11 (N.D. Cal. Dec. 1, 1995)); *see Bristol Locknut Co. v. SPS Techs., Inc.*, 677 F.2d 1277, 1283 (9th Cir. 1982). This rule is based on policy considerations:

> The possibility of obtaining a refund of all royalties paid might induce a manufacturer to accept a license based on a patent of doubtful validity, derive the benefits of suppressed competition which the patent affords, and challenge validity only after the patent's expiration. The licensee would have a chance to regain all the royalties paid while having enjoyed the fruits of the license agreement.

*St. Regis Paper Co. v. Royal Indus.*, 552 F.2d 309, 314 (9th Cir. 1977). "This rationale applies equally to a licensee's ability to recoup . . . past royalties if the products made under the license agreement are later determined to be non-infringing." *Applied Elastomerics*, 521 F. Supp. 2d at 1039.

---

Agreement scope." Toshiba Amend. Ans., Counterclaim ¶¶ 31-32. Tessera did not address this claim because the audit claims are not the basis for Toshiba's refund request. Tessera MSJ at 4 n.1. Because Tessera is not seeking summary judgment as to the audit claim, the Court will not address it.

United States District Court
Northern District of California

The Ninth Circuit, therefore, has held that a licensee is not entitled to a refund of royalties paid before it challenges the patent's validity, *id.*, or "takes an affirmative step that would prompt the early adjudication of the validity of the patent, such as . . . notifying the licensor that the payments were being stopped because the patent was believed to be invalid," *Bristol Locknut*, 677 F.2d at 1283.

### C. Federal Patent Law Bars Toshiba's Requested Refund

It is undisputed that Toshiba's first affirmative step to prompt early adjudication of any Tessera Patent was on November 27, 2013, when Toshiba notified Tessera that it would cease making its royalty payments. *See* Toshiba Royalty Letter. Prior to this letter, Toshiba did not challenge the validity of any Tessera Patent or claim non-infringement. Indeed, as Toshiba's counsel explained at oral argument before the Ninth Circuit, Toshiba made a conscious business decision *not* to challenge any Tessera Patents because Toshiba did not want litigation and did not know that it was "100 percent going to win" if it did go into court. Ninth Circuit Oral Arg. Tr., Harbour Decl. Ex. 5, at 32-33, ECF 379-5. Therefore, under federal patent law, Toshiba cannot recoup any of its royalty payments made before November 27, 2013.

Toshiba argues, however, that Tessera relies on cases to supports its royalty recoupment bar argument that are inapposite because Tessera's cases do not apply to the improper collection of royalty payments after a patent expires. Toshiba Opp. at 6-7. While Toshiba frames its claim as one for refund of royalty payments made for expired patents, the Court does not agree. Indeed, it is clear from the record that Toshiba continued to make royalty payments after September 2010 based on its belief that Toshiba's products practiced "additional patents" covered by the Agreement that had not expired. Toshiba Opp. at 8; *see also* Termination Letter at 1 (terminating 1999 Agreement in February 2016 under Section X.D); Ninth Circuit Oral Arg. Tr. at 32-33 (explaining that the parties discussed two other, unexpired patents that may have been covered by the 1999 Agreement after September 2010). Toshiba, therefore, was not making royalty payments based only on expired patents, but also on the untested possibility of infringement of other unexpired patents, and so it is not seeking to recoup royalty payments made after a patent's expiration.

8

In addition, Toshiba argues that federal patent law renders the 1999 Agreement unenforceable after September 24, 2010 – when the '977 and '326 Patents expired.  Toshiba Opp. at 5-12.  The Court is not persuaded.

Toshiba relies heavily on *Brulotte v. Thys Co.*, 379 U.S. 29 (1964), for its assertion that the 1999 Agreement was unenforceable after September 24, 2010 – but that case is inapposite.  *See* Toshiba Opp. at 5-6.  In *Brulotte*, respondent, owner of various patents for hop-picking, sold a hop-picking machine to petitioner and issued a license for its use.  *Brulotte*, 379 U.S. at 29.  Only seven of the licensed patents were incorporated into the machine, and all seven patents expired prior to the expiration of the license.  *Id.* at 30.  Respondent sued after petitioners refused to make royalty payments following the expiration of the patents.  *Id.*  The Supreme Court concluded, that a patent holder cannot exact royalties "after expiration of the last of the patents incorporated in the machines" because "the grant of patent monopoly was spent and . . . an attempt to project it into another term by continuation of the licensing agreement is unenforceable."  *Id.* at 33-34; *see Kimble v. Marvel Entm't, LLC*, 135 S. Ct. 2401, 2405 (2015) (declining to overrule *Brulotte*'s holding that "a patent holder cannot charge royalties for the use of his invention after its patent term has expired").  In other words, whether a product incorporates "one patent or a dozen, the ability to exact royalties runs *to the last of the patents* providing monopoly protection."  *Zila, Inc. v. Tinnell*, 502 F.3d 1014, 1026 (9th Cir. 2007) (emphasis added).

Therefore, according to Toshiba, Tessera cannot exact royalties under the 1999 Agreement after September 24, 2010, when the '977 and '326 Patents expired.  Toshiba Opp. at 6.  Toshiba does not dispute, however, that when it ceased making payments in 2013 there remained unexpired Tessera Patents covered by the Agreement.  As stated above, it is clear from the record that Toshiba continued to make royalty payments based on its belief that its products practiced "additional patents" under the Agreement that had not expired.  Toshiba Opp. at 8.  *Brulotte*, therefore, does not apply because Toshiba made royalty payments based on *other* patents it believed were unexpired, valid, and enforceable.[3]  Additionally, the claim at issue is Toshiba's

_____

[3] There is factual dispute as to when Toshiba was aware that the '977 and '326 Patents expired. The expiration of these patents, however, is not relevant because Toshiba believed its products

9

claim for refund of pre-2013 royalty payments. *Brulotte* would only exclude Tessera's affirmative claim for unpaid royalties due after expiration of a patent. Tessera makes no such claim and its motion for summary judgment is directed only at Toshiba's counterclaim for refund. Tessera MSJ at 1.

Toshiba's remaining arguments also fail. Neither a claim that Tessera breached its covenant of good faith and fair dealing, nor a claim that Tessera was unjustly enriched, abrogates the royalty refund bar. Toshiba has cited no authority to the contrary. And to the extent that Toshiba now argues fraud, its Answer and Counterclaim are devoid of such allegations.

Thus, under *Bristol Locknut*, *St. Regis Paper*, and district court cases uniformly applying the bar to recoupments of royalties already paid, Toshiba is not entitled to seek refund for royalties paid prior to November 27, 2013, when it took its first affirmative step to prompt early adjudication of its non-infringement contention. On this basis, Tessera is entitled to summary judgment on this claim.

In the alternative, Tessera argues that California law prohibits the refund of voluntary payments and that Tessera did not breach the implied covenant of good faith and fair dealing. Tessera MSJ at 7-11. Because Toshiba's claim for a return of royalty payments is barred by federal patent law, the Court need not address Tessera's alternative arguments.

Accordingly, the Court GRANTS Tessera's Motion for Partial Summary Judgment on Toshiba's Request for a Refund of Royalty Payments.

## IV.    TOSHIBA'S MOTION FOR SUMMARY JUDGMENT

Toshiba's second motion for summary judgment seeks summary judgment as to Tessera's claims that Toshiba failed to: (1) pay royalties for certain products meeting the definition of F-μBGA Packages; (2) pay royalties that were adjusted for the U.S. Consumer Price Index ("CPI Adjustments"); (3) pay amounts found payable by a third-party auditor under the audit provision; and (4) cooperate with the audits and resolve audit disputes as required by the 1999 Agreement. *See* Toshiba MSJ. In addition, Toshiba seeks summary judgment as to its counterclaim for

---

may have practiced other patents and made a business decision not to challenge the validity or enforceability of any Tessera Patent under the 1999 Agreement.

declaratory relief for resolution of the financial audits and declaratory relief regarding Toshiba's termination upon the non-use of relevant Tessera Patents under the 1999 Agreement. *See* Toshiba MSJ. For the reasons stated below, Toshiba's Second Motion for Summary Judgment is DENIED.

### A. Claims for Unpaid Royalties

Toshiba moves for summary judgment claiming that Tessera cannot collect unpaid royalties because Tessera has failed to prove patent infringement and the claims are time barred. In the First Amendment Complaint, Tessera brings two claims against Toshiba for failure to pay (1) royalties on products that meet the definition of F-μBGA Packages under the 2002 Amendment, and (2) CPI Adjustments. First Am. Compl. at 3-4, ECF 87. First, Tessera alleges that Toshiba agreed to pay royalties on all products meeting the definition of F-μBGA Packages under the 2002 Amendment, and Toshiba failed to do so. Tessera Opp. to MSJ at 3-6. Second, Tessera alleges that Toshiba failed to pay the CPI Adjustments identified in the 2011 and 2015 audit reports within 30 days of the reports, as required by the Agreement. 1999 Agreement ¶¶ III.D, XI.A; *see* 2011 KPMG Report, Ashley Decl. Ex. 21, at 5, ECF 405-33, 406-25; 2015 KPMG Report, Ashley Decl. Ex. 30, at 5, ECF 405-42, 406-34. For the reasons stated below, the Court DENIES Toshiba's motion as to these claims.

### i. Statute of limitations

Under California law, the statute of limitations for breach of a written contract is four years. 1999 Agreement ¶ XVI.A; Cal. Civ. Proc. Code § 337. Under the discovery rule, however, "a cause of action . . . accrues when the plaintiff discovers or should have discovered all facts essential to his cause of action" – that is "when plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence." *Apr. Enters., Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983) (internal quotation marks omitted). The discovery rule, therefore, applies where (1) the injury or act causing the injury was "difficult for the plaintiff to detect"; (2) "the defendant has been in a far superior position to comprehend the act and the injury; and (3) the defendant had reason to believe the plaintiff remained ignorant he had been wronged." *Gabriel Techs. Corp. v. Qualcomm Inc.*,

857 F. Supp. 2d 997, 1010 (S.D. Cal. 2012) (internal quotations marks omitted).  While "the discovery rule may extend the statute of limitations, . . . it cannot decrease it."  *Cleveland v. Internet Specialties W., Inc.*, 171 Cal. App. 4th 24, 32 (2009).

"It is [the] plaintiff's burden to establish facts showing that he was not negligent in failing to make the discovery sooner and that he had no actual or presumptive knowledge of facts sufficient to put him on inquiry."  *Apr. Enters.*, 147 Cal. App. 3d at 833 (internal quotation marks omitted).  "Whether the plaintiff exercised reasonable diligence is a question of fact . . . ."  *Id.* (brackets and internal quotation marks omitted).

### ii.  Royalty payments under the 1999 Agreement and 2002 Amendment

Toshiba seeks summary judgment claiming that Tessera has no evidence of infringement and thus Tessera is not entitled to royalty payments.  Tessera claims that Toshiba must pay royalties for all products that meet the definition of F-µBGA Packages as those products infringed the '977 and '326 Patents (the "Movement Patents") before the patents expired.  *See* Tessera Opp. to MSJ at 3-6; 2002 Amendment.  In support of this claim, Tessera offers evidence that Toshiba admitted that F-µBGA Packages infringe the Movement Patents under the 2002 Amendment. Tessera Opp. to MSJ at 3; *see* Toshiba MSJ at 4.  Toshiba, however, argues that it is entitled to summary judgment because Tessera failed to prove patent infringement as evidenced by its failure to comply with the PLRs.  Toshiba MSJ at 3-5.  In addition, Toshiba argues that Tessera's claims are time-barred.  This Court disagrees.

First, Tessera is not required to comply with the PLRs in this narrow instance.  Toshiba argues that, because the 1999 Agreement is an infringement-based license, Tessera must prove infringement for Toshiba to owe any royalties and thus Tessera must comply with the PLRs. Toshiba MSJ at 3; *see* First MSJ Order at 18-19 ("[T]he [1999 Agreement] is a patent-infringement-based license requiring payment of royalties only if Toshiba practiced the claims of the unexpired, valid, and enforceable licensed patent.").  The PLRs, however, "apply to all civil actions filed in or transferred to this Court *which allege infringement* of a utility patent."  PLR 1-1 (emphasis added); *see also* Order re Joint Status Report at 3, ECF 253 ("[I]n the event that Tessera submits infringement contentions . . . , *then the Patent Local Rules will be triggered* and all of the

time lines set forth therein will apply to this case." (emphasis added)).  Tessera is not making any new infringement contentions.  *See, e.g.*, Feb. 2017 Hr'g Tr. at 18, ECF 324 ("We're not putting on a patent infringement case."); Dec. 2016 Hr'g Tr. at 28-29, ECF 280 ("[W]e're not putting in new patents, new infringement contentions . . . .").  Rather, Tessera is relying on Toshiba's admissions that certain of its products infringed the Movement Patents to prove that Toshiba breached the Agreement.  Therefore, Tessera is not required to comply with the PLRs for this limited argument.

Second, Tessera may present its admission theory of infringement that Toshiba breached the Agreement by failing to pay royalties on products that meet the definition of F-μBGA Packages, which Toshiba allegedly admitted infringed the '977 and '326 Patents under the 2002 Amendment.  The admission of a corporate officer that a company's product infringes a patent is akin to marking a product with a patent number, and "[t]he practice of marking a product with a patent number is a form of extrajudicial admission that the product falls within the patent claims."  *Frolow v. Wilson Sporting Goods Co.*, 710 F.3d 1303, 1309 (Fed. Cir. 2013).  Such evidence may be countered by the admitting party and "is certainly relevant on the issue of infringement."  *Id.* at 1310; *see also Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. CV1604502BROMRWX, 2016 WL 7616849, at *2 (C.D. Cal. Sept. 8, 2016) (finding that defendant marked its product with plaintiff's patent number and "such an admission typically weighs in favor of finding infringement").

Here, the Court has already ruled that the 2002 Amendment provides that Toshiba is obligated to pay royalties on F-μBGA Packages as defined in the 2002 Amendment under the terms of the 1999 Agreement, including Types 1 to 4 F-μBGA Packages.  *See, e.g.*, 2002 Amendment; Ashley Decl. Ex. 13, at 45, ECF 405-25, 406-17; Ashley Decl. Ex. 46, at 16-17, 20-21, 47, ECF 405-56, 406-50; *see also* First MSJ Order at 16-18.  Whether Toshiba agreed that it is obligated to pay royalties on other products meeting the definition of F-μBGA Packages, and whether there is infringement beyond the Movement Patents, are disputed issues of fact.  *See Frolow*, 710 F.3d at 1310 ("Of course, whether a party's marking, in view of the record as a whole, raises a genuine issue of material fact, will depend on the facts of each case.").

Accordingly, summary judgment is not appropriate. *See Celotex Corp.*, 477 U.S. at 322 (finding summary judgment appropriate if, among other things, "there is no genuine issue as to any material fact"). However, due to Tessera's choice not to offer infringement evidence, it will be limited to proving this portion of its claim through admissions. *See infra* Part V (striking expert testimony).

Finally, Toshiba argues that Tessera's claims are barred by California's four-year statute of limitations. *See* Toshiba MSJ at 5-6. Specifically, Toshiba argues that Tessera was on notice of the royalty payments Toshiba planned to report as due for products meeting the definition of F-μBGA Packages when KPMG sent Tessera a draft report in April 2011 – more than four years prior to Tessera initiating this action in May 2015. Toshiba MSJ at 10. The statute of limitations, however, does not begin to run until Toshiba refused to pay royalties, and the discovery rule cannot be used to decrease the statute of limitations period. *See Cleveland*, 171 Cal. App. 4th at 32 ("[T]he discovery rule may extend the statute of limitations, but it cannot decrease it."). Tessera, moreover, offers evidence that it could not have discovered that Toshiba was withholding payments on products that met the definition of F-μBGA Packages until after discovery. *See, e.g.*, Decl. of Dr. John C. Bravman ("Bravman Decl.") ¶¶ 3-8, ECF 405-6, 406-2; Tessera Opp. to MSJ at 13. Therefore, there is at least a triable issue of fact as to the application of the discovery rule. *See Turtle v. Castle Records Inc.*, No. 03-3922MMC, 2005 WL 1159419, at *2 (N.D. Cal. May 17, 2005) (denying summary judgment because plaintiff put forth evidence he was unaware of defendant's activity "thereby establishing a triable issue of fact as to the application of the discovery rule").

Accordingly, the Court DENIES Toshiba's motion for partial summary judgment as to Tessera claims with regard to unpaid royalties for products meeting the definition of F-μBGA Package.

### iii. Royalty payments for CPI Adjustments

Toshiba moves for summary judgment claiming that it is not liable to pay CPI Adjustments because Tessera has no evidence of infringement and its claim is time barred. Toshiba MSJ at 6-11. Tessera claims that Toshiba breached the Agreement by failing to pay CPI Adjustments for

both paid and unpaid royalties, as identified by the 2011 and 2015 KPMG Reports.  Tessera Opp. to MSJ at 6-7; *see* 1999 Agreement ¶ III.D.  According to Tessera, summary judgment is not appropriate because there are disputed issues of fact and its claim for payments for CPI Adjustments is not time barred.  The Court agrees.

First, as stated above, Tessera acknowledges that it is not alleging patent infringement and therefore Tessera is not required to comply with the PLRs.  *See* PLR 1-1 ("[A]pply[ing] to all civil actions filed in or transferred to this Court which allege infringement of a utility patent.").

Second, Toshiba argues that Tessera's claim for CPI Adjustments is time barred because Toshiba sent Tessera quarterly royalty reports that showed the royalties due.  Toshiba MSJ at 11.  According to Toshiba, prompt review of the royalty reports would have confirmed their accuracy or inaccuracy.  Toshiba MSJ at 11.  Therefore, Toshiba argues, the four-year statute of limitations was triggered with the receipt of each royalty report.  Toshiba MSJ at 11.

Tesssera, however, put forth evidence that it exercised reasonable diligence in discovering that CPI Adjustments were not paid, and therefore its claims are not time barred.  For example, Tessera offers evidenced that the reports' "royalty dollar figures embedded multiple calculations," Tessera Opp. to MSJ at 13, and therefore "determining whether a given entry in a given royalty report does or does not contain CPI [A]djustments require[d] multiple analytical steps and documents . . . and also taking into account items such as capped pin amounts which are not expressly set forth in the royalty calculations," Decl. of Jeffrey Kinrich ("Kinrich Decl.") ¶¶ 7-11, ECF 405-7, 406-1; *see* Decl. of Christopher M. Pickett ("Pickett Decl.") ¶ 4, ECF 405-5, 406-3 (describing Tessera practice of conducting periodic audits of the royalty reports to determine whether Toshiba paid the CPI Adjustments).  Tessera, therefore, has met its burden of showing that it has evidence that it was not negligent and that it had no actual or presumptive knowledge of facts sufficient to put it on inquiry notice.  *See Jaffe v. Carroll*, 35 Cal. App. 3d 53, 59 (1973) ("Whether or not the cause of action is barred by the statute of limitations is a question of fact for the trier of fact.").  Because there is a disputed question of material fact, summary judgment is not appropriate.

Accordingly, the Court DENIES Toshiba's motion for partial summary judgment as to

Tessera claims with regard to unpaid CPI Adjustments.

**B.    Claims Regarding the Audit Provision**

Toshiba moves for summary judgment claiming that the 2011 and 2015 KPMG Reports do not support Tessera's claims for damages, it did not breach the audit provision, and it can challenge the results of the 2011 and 2015 KPMG Reports. Toshiba MSJ at 6-13.

The 1999 Agreement provided for a "Reasonable Audit." 1999 Agreement ¶ XI.A. Specifically, the agreement provided that "Tessera shall have the right to examine and audit through an independent third party CPA . . . all records of [Toshiba] that may contain information bearing upon the amount of fees payable under the Agreement." 1999 Agreement ¶ XI.A. The provision also states that "[t]he results of any such audit *shall be final*." 1999 Agreement ¶ XI.A (emphasis added).

Under this audit provision, Tessera used KPMG to conduct two audits. The first audit began in 2009 and covered the period January 2005 to June 2009. 2011 KPMG Report at 1. KPMG issued its first audit report in May 2011, finding that Toshiba owed Tessera ███████ for unpaid royalties during this period, including ███████ for royalties due on sales of large-grid array ("LGA") products and ███████ for CPI Adjustments. 2011 KPMG Audit Report at 5. Tessera demanded payment of this amount on May 31, 2011. Ashley Decl. Ex. 22, ECF 405-34, 406-26. Toshiba responded that it would withhold payment of the alleged unpaid royalties pending further discussions between the parties. Ashley Decl. Ex. 23, 405-35, 406-27.

The second KPMG audit took place in 2015 and covered the period July 2009 to December 2014. 2015 KPMG Report at 1. Toshiba did not cooperate with this audit: it rejected five KPMG requests to commence the review and advised KPMG not to contact Toshiba again. 2015 KPMG Report at 1-2. KPMG, therefore, prepared the report without examining any of Toshiba's data or information, instead relying on third-party and publicly available information. 2015 KPMG Report at 2. KPMG concluded that Toshiba owed Tessera ███████ for unpaid royalties, including ███████ for unpaid CPI Adjustments. 2015 KPMG Report at 3.

Toshiba now seeks summary judgment as to Tessera's claims that Toshiba breached the 1999 Agreement by failing to cooperate with KPMG during the 2015 audit and to pay amounts

due under KPMG's audit reports, First Am. Compl. at 3-4, ECF 87, and as to its counterclaims for declaratory relief of resolution of the financial audits, Toshiba MSJ at 6-12. Toshiba argues that the 2015 KPMG Report was not an audit under the Agreement or industry standards and that Toshiba provided all records required under the Agreement. Toshiba MSJ at 11-13. Moreover, Toshiba challenges findings in the audits and argues that it does not owe royalties because Tessera did not assert any patent infringement contentions. Toshiba MSJ at 6-10.

Tessera opposes, arguing that summary judgment is not warranted because the results of the audits are final and there are disputed facts. Tessera Opp. to MSJ at 7-13.

For the reasons stated below, Toshiba's motion for summary judgment as to the claims regarding the audit provision is DENIED.

### i. The finality of audits under the 1999 Agreement

Toshiba argues that it is entitled to summary judgment on its claim that it can challenge the findings in the 2011 and 2015 KPMG Reports. Toshiba MSJ at 8-10. According to Toshiba, while the Agreement provided for "final" audits, it did not preclude the parties from challenging the audits in court. Therefore, because it can challenge the audits, Toshiba argues that it is not liable for unpaid royalties under the audits because the auditors applied a product-based theory even though the Court held that the Agreement is an infringement-based license. Toshiba MSJ at 7. The threshold question, however, is whether Toshiba can even challenge the findings of the audits, which were to be "final" under the Agreement. 1999 Agreement ¶ XI.A.

Toshiba argues that it is "certainly allowed to challenge the audits in court" because there has been no waiver "of any and all challenges in any forum." Toshiba MSJ at 8. Toshiba points to the Agreement's "Governing Law" provision for support, which provides that litigation to resolve "any dispute, controversies, claims or difference which may arise from, under, out of or in connection with this Agreement" that cannot be settled would take place in San Jose, California. 1999 Agreement ¶ XVI.A. Moreover, Toshiba points to the course of dealing between Tessera and Toshiba as evidence that "neither party considered the audits unchallengeable or non-appealable." Toshiba MSJ at 9.

According to Tessera, however, Toshiba cannot "second-guess KPMG's audit findings,

particularly not years after Toshiba's payments deadline already passed." Tessera Opp. to MSJ at 7. Tessera argues that "when parties agree that a third party's resolution of a dispute 'shall be final,' courts cannot second-guess those findings absent *fraud or its equivalent*." Tessera Opp. to MSJ at 7-8. "[A]t the very least," Tessera argues the 1999 Agreement is ambiguous as to whether an auditor's findings are final and therefore unchallengeable in court. Tessera Opp. to MSJ at 8. The Court agrees that the audit provision is ambiguous.

Whether a contract or its terms are ambiguous is a question of law for the court, *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003), and "a contract is ambiguous if it 'is reasonably susceptible of more than one application to material facts,'" *Great Minds v. Office Depot, Inc.*, No. CV 17-7435-JFW (EX), 2018 WL 4945643, at *4 (C.D. Cal. Jan. 18, 2018) (quoting *Dore v. Arnold Worldwide, Inc.,* 39 Cal. 4th 384, 391 (2006)). "If we find a contract to be ambiguous, we ordinarily are hesitant to grant summary judgment because differing views of the intent of parties will raise genuine issues of material fact." *San Diego Gas & Elec. Co. v. Canadian Hunter Mktg. Ltd.*, 132 F.3d 1303, 1307 (9th Cir. 1997) (internal quotation marks omitted); *see Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (granting summary judgment because ambiguous contract language created a genuine issue of material fact). "This circuit has not, however, adopted a rigid rule prohibiting reference to extrinsic evidence in resolving a contractual ambiguity on a summary judgment motion." *San Diego Gas & Elec.*, 132 F.3d at 1307. If a contract is ambiguous and the court can resolve the ambiguity consistent with the non-moving party's contention, then summary judgment should be denied. *Id.* In such an analysis, the court must construe all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Id.*

Here, "final" is not defined by the 1999 Agreement, and a reasonable juror could find that either party's interpretation of "final" is plausible. *See Adair*, 185 F.3d at 1063 (finding contract ambiguous because there was more than one plausible reading). Moreover, if the Court resolves the ambiguity, the ambiguity could be resolved consistent with Tessera's contention that the audits are to be final and unchallengeable. *See, e.g.*, FINAL, Black's Law Dictionary (11th ed. 2019) ("Terminal and unappealable, except on grounds of procedural error, fraud, or mistake."); *Final,*

Merriam Webster (2019), https://www.merriam-webster.com/dictionary/final ("[N]ot to be altered or undone.").  This issue, therefore, is inappropriate for resolution on summary judgment.

Accordingly, the Court DENIES Toshiba's motion for summary judgment as to its challenge of the findings in the KPMG audits.

### ii.     The 2015 KPMG Report

Toshiba also seeks summary judgment against Tessera's claim that Toshiba breached the audit provision by not cooperating with KPMG for the 2015 KPMG Report and failing to make royalty payments pursuant to the 2015 KPMG Report.

First, Toshiba argues that it provided all records to Tessera and KPMG as required under the Agreement and that Tessera failed to demonstrate that any of Toshiba's records contained information bearing upon royalties due.  Toshiba MSJ at 12-13.  It is a disputed issue of fact, however, whether Toshiba provided all records required by the Agreement.  The 1999 Agreement provided that "Tessera *shall have the right* to examine and audit . . . all records of [Toshiba] that may contain information bearing upon the amount of fees payable under this Agreement."  1999 Agreement ¶ XI.A.  Tessera offers evidence that Toshiba failed to provide KPMG with any of its records.  *See* 2015 KPMG Report at 1-2.  For example, Tessera offers the following statement from KPMG: "Toshiba did not cooperate with our royalty review.  KPMG reached out to Toshiba five times to commence the royalty review: however, Toshiba rejected KPMG's requests on all occasions and ultimately advised KPMG not to contact Toshiba again."  KPMG Report at 1-2.  Accordingly, a reasonable jury could find that Toshiba failed to provide the records required by the Agreement's audit provision.

Second, Toshiba argues that the 2015 KPMG Report cannot support Tessera's claims for damages because it was not an audit under the Agreement or industry standards.  According to Toshiba, there was no audit because KPMG failed to examine its records.  Toshiba MSJ at 11-12.  It is undisputed that KPMG did not examine Toshiba's records.  *See, e.g.*, Toshiba MSJ at 11-12 ("It is undisputed that KPMG did not examine, audit, or have access to Toshiba's actual records."); Tessera Opp. to MSJ at 12 (stating that Toshiba did not "share information or cooperate").  Tessera offers evidence, however, that Toshiba prevented KPMG from examining its

records and conducting the audit as required by the terms of the Agreement.  Toshiba MSJ at 11-12.  "[A] 'party to a contract cannot take advantage of his own act or omission to escape liability thereon . . . where he prevents a fulfillment of a condition precedent, or its performance by the adverse party, he[] cannot rely on such condition to defeat his liability.'"  *Xnergy Fin. LLC v. Champion Pain Care Corp.*, No. CV1704766SJOASX, 2017 WL 7156284, at *4 (C.D. Cal. Oct. 5, 2017) (quoting *Pac. Venture Corp. v. Huey*, 15 Cal. 2d 711, 717 (1940)); *see Lortz v. Connell*, 273 Cal. App. 2d 286, 290 (1969) ("[P]revention of performance by one party to a contract excuses performance by the other.").  Tessera offers evidence that a reasonable jury could believe that Toshiba prevented the fulfilment of a condition precedent by refusing to provide KPMG with its records, and therefore Toshiba cannot take advantage of KPMG's failure to examine its records.

A reasonable jury, furthermore, could find that the 2015 KPMG Report is a reasonable audit under the circumstances.  The 1999 Agreement provides for reasonable audits, 1999 Agreement ¶ XI; however, it did not contemplate how an audit should be conducted in the event that Toshiba fails to cooperate with KPMG.  Tessera offers evidence that KPMG sought Toshiba's records multiple times, Toshiba advised KPMG not to contact Toshiba again, and KPMG informed Toshiba that it would proceed with its royalty review despite Toshiba's decision not to cooperate.  KPMG Report at 2.  Moreover, Tessera offers evidence that KPMG used publicly available and third-party information to compile the 2015 KPMG Report.  2015 KPMG Report at 2.  A reasonable juror, therefore, could find that KPMG acted reasonably under the circumstances, and so the 2015 KPMG Report constitutes an audit under the Agreement.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[S]ummary judgment will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.").

Accordingly, there is a genuine dispute of material fact and so the Court DENIES Toshiba's motion for summary judgment as to whether the 2015 KPMG Report can support Tessera's claim for damages and whether Toshiba breached its obligation to cooperate under the audit provision.

### C. Toshiba's Termination of the 1999 Agreement

In its first motion for summary judgment, Toshiba moved for an order confirming that it properly terminated the Agreement on February 12, 2016, under section X.A. First MSJ Order at 19; Termination Letter at 1. The Court denied Toshiba's first motion for summary judgment on this issue, finding that summary judgment was inappropriate because there was a genuine issue of material fact as to the meaning of "relevant Tessera Patents." First MSJ Order at 20. Toshiba now "renews its motion for summary judgment on termination" in light of the Court's first summary judgment order. Toshiba MSJ at 13.

This Court ordinarily allows only one motion for summary judgment, Standing Order ¶ VI.A, and the Court already decided that summary judgment was not appropriate for resolution of Toshiba's claim that its termination was effective. The Court will not entertain the same argument twice. Accordingly, the Court DENIES Toshiba's motion for summary judgment as to its claim that its February 2016 termination of the 1999 Agreement was effective.

### D. Conclusion

For the reasons stated above, Toshiba's Second Motion for Summary Judgment is DENIED.

## V. TOSHIBA'S MOTION TO STRIKE

Toshiba moves to strike all of Tessera's Bravman and Kinrich Reports because Tessera did not put forth any patent infringement contentions or comply with the PLRs.

### A. Background

Against the backdrop of Tessera obtaining a broadened scope of the '977 and '326 Patents, the parties entered the 2002 Amendment "to clarify that such F-µBGA Packages are so covered, to establish a royalty due Tessera for [Toshiba's] exercise of its rights under the Agreement with respect to such F-µBGA Packages, and to authorize [Toshiba] to have other parties make such F-µBGA Packages for [Toshiba] under the Agreement." 2002 Amendment at 1. The 2002 Amendment then defined "F-µBGA Packages" and included a list of four different combinations of materials as "examples of F-µBGA Packages currently made by [Toshiba], all of which are covered by the Agreement." 2002 Amendment ¶ 1.K. The 2002 Amendment also provided that

"[Toshiba] shall pay running royalties . . . for F-µBA Packages."  2002 Amendment, ¶ 5.C.  On

November 6, 2016, the Court found that "[u]nder the 2002 Amendment, Toshiba gave up the fight

over the royalties due, put the F-µBGA Packages under the umbrella of the 1999 Agreement, and,

upon the expiration of the patents, Toshiba would no longer be obligated to pay royalties."  First

MSJ Order at 18.

After the Court's first summary judgment ruling, Tessera stated that it would not put forth

patent infringement claims.  ECF 249, at 2.  Nevertheless, the Court gave Tessera until December

2, 2016, to present patent infringement contentions.  Order re Joint Status Report at 1.  The Court

held that "in the event that Tessera submits infringement contentions by the December 2, 2016,

deadline, then the Patent Local Rules will be triggered and all of the time lines set forth therein

will apply to this case."  Order re Joint Status Report at 3.  Tessera did not present any patent

infringement contentions and the PLRs were not triggered.

On January 20, 2017, Tessera served Toshiba with the Bravman and Kinrich Reports.  ECF

282, 283.  The Bravman Report contains Dr. Bravman's analysis of Toshiba products and

identifies products Dr. Bravman believes meet the definition of F-µBGA Packages under the 2002

Amendment and other patents these products may have infringed.  Bravman Report  ¶¶ 66-94,

Decl. of Michael Harbour in Supp. of Tessera Opp. to Strike ("Harbour Decl.") Ex. D, ECF 407-

12, 408-5.  The Kinrich Report contains analysis by Tessera's damages expert as to how much

Toshiba owed but failed to pay for F-µBGA Packages prior to the expiration of the '977 and '326

Patents.  Kinrich Report ¶¶ 40-42, 50-52, Harbour Decl. Ex. G, ECF 407-16, 408-8.

**B.    Discussion**

Toshiba now moves to strike these reports because the 1999 Agreement is a patent-

infringement-based license and Tessera has not put forth any patent infringement contentions.

Mot. to Strike at 1.  Indeed, Tessera failed to comply with the PLRs, and therefore Toshiba argues

that it is prejudiced by the Bravman and Kinrich Reports.  Mot. to Strike at 2.  Tessera counters

that Toshiba admitted that products that meet the definition of F-µBGA Packages are royalty

bearing, and therefore patent infringement contentions – and thus compliance with the PLRs – is

not necessary.  Tessera Opp. to Strike at 1; Harbour Decl. Ex. A, at 54, ECF 407-8, 408-2.  In

addition, Tessera argues that Toshiba fails to cite any applicable authority for excluding expert testimony and that this motion is procedurally barred under this Court's standing orders. Tessera Opp. to Strike at 1-2. For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Toshiba's motion to strike the expert reports.

As stated above, Tessera may proceed with its theory that Toshiba admitted that it breached the Agreement by failing to pay royalties for products that meet the definition of F-μBGA Packages, as defined in the 1999 Agreement and 2002 Amendment. Infringement contentions, therefore, are not required because of Toshiba's alleged admissions. *See Frolow*, 710 F.3d at 1309 ("[S]uch an admission, that the accused product falls within the asserted claims, is certainly relevant on the issue of infringement."). The Court reminds the parties that the first summary judgment order determined that the 2002 Amendment did not alter the patent infringement structure of the 1999 Agreement and that application of the 2002 Amendment would be in accordance with the 1999 Agreement. The Court expressly ruled that the 2002 Amendment was not a product-based agreement. First MSJ Order at 17-18. Thus, the Court will allow evidence regarding Toshiba's admissions, but thus far, the only evidence Tessera has submitted relates potentially to whether Toshiba has admitted that the F-μBGA Package as defined in the 2002 Amendment infringed the '977 or '326 Patents. This means that Dr. Bravman may not opine that products meeting the definition of F-μBGA Packages also infringe other patents covered by the 1999 Agreement. Tessera will be precluded from offering any expert opinion regarding infringement of other patents because it failed to comply with the PLRs.[4]

Finally, the Reports contain legal opinions as well as expert testimony as to intent, motive, and state of mind. Such testimony is not appropriate expert testimony. *See, e.g.*, *McHugh v. United Serv. Auto. Ass'n*, 164 F.3d 451, 454 (9th Cir. 1999) ("[Expert] testimony cannot be used to provide legal meaning or interpret the [contracts] as written."); *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 294 (N.D. Cal. 2017) ("Courts routinely exclude expert testimony as to intent, motive, or state of mind as issues better left to a jury."). The Court, therefore, GRANTS

---

[4] The Court's ruling does not pertain to foreign counterparts.

Toshiba's motion to strike as to these statements and STRIKES the legal opinions and testimony as to intent, motive, and state of mind contained in paragraphs 47-48, 52, 54, 63-65, 96-97, 99-102, 105-13, 115-76, 180-87 of the Bravman Report and all parts of the Kinrich Report that rely on these parts of the Bravman Report.[5]

## VI.    CONCLUSION

For the forgoing reasons, Tessera's motion for partial summary judgment on Toshiba's request for a refund of royalty payments is GRANTED, Toshiba's second motion for summary judgment is DENIED, and Toshiba's motion to strike is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Dated: October 8, 2019

_____
BETH LABSON FREEMAN
United States District Judge

---

[5] Portions of these paragraphs might not contain legal opinions or testimony as to intent, motive, or state of mind.  Those portions of the identified paragraphs are not stricken.